The opinion of the court was delivered by
DuNCAN, J.
The facts are so clearly and concisely stated in the case submitted to the. court, that it is unnecessary to re-state them.
The first question on this statement is, had Thomas Fromber-ger an interest in the estate which he could dispose of as owner? In other words, was it his own, of had he, under the conveyance, a naked power? If he continued the owner of the ultimate fee, the plaintiffs cannot recover; if he had only a power, a second question arises, has that power been duly executed in the prescribed form. A third point has been, made, or rather doubt suggested," whether the sale under the decree of the Orphans’ Court operated so as to destroy the subject matter of the trust, and leave that into which it was converted, money, under the dominion of Thomas, as if no conveyance had ever been made to the defendants. The *174 plaintiffs claim under this conveyance as cestuis que trust,, from the defendants as trustees, the execution of the trusts declared. The trustees, claiming nothing for themselves, but desirous of acting as the court shall decree, interpose'the claim of Maria Fromber-ger, who claims the whole estate, contending, that Thomas From-berger, held the reversion of the estate undisposed of by the deed of trust, and if he did not, that he has executed the power reserved by him in that deed. This will be considered, first, on the granting clause, and trusts declared, without relation to the power reserved; and secondly, in conjunction with the proviso or restraining clause. The first is a .question of considerable intricacy, and opens an extensive field of inquiry into the doctrine of uses and trusts, of limitation and of purchase. Of these doctrines it has been long since remarked, that they had been very good clients in Westminister Hall, and they continue to be found constant suitors in these courts. In our courts the doctrince of uses and trusts is not a very familiar one. Few cases have occurred, in which this very abstruse doctrine has been considered, and I have not, in the reports of decisions in other states, found one that has any bearing on this question. The English reports abound with them.
It is my intention to compress into as narrow a compass as is consistent with any perspicuity of argument, the observations I have to make on the driest of all subjects.
It is necessary to keep in mind, that the conveyance to the defendants was by bargain and sale, and not by covenant to stand seised to uses, or by feoffment. The effect of these instruments is very different, as we shall presently see.
There are some clear principles, which, unless I very much mis-' understand them, when applied to this conveyance, are decisive in favour of the plaintiffs’ construction.
First. A man' cannot raise a fee simple to his own right heirs, by the name of heirs, as a purchaser, unless he parts with the whole estate. Co. Litt. 22. a. 2 Bl. Rep. 687, and Fearne, (4th ed.) 67.
Second. Whatever portion of the estate or use is not disposed of remains in the person who disposes, and will descend to his right heirs: for, being part of the old estate, it shall continue to go, as if no disposition had been made of it. Co. Litt. 23. 3 P. Wms. 63. 1 Fearne 48. Sanders on uses and trusts, 101 to 105. 1 Fearne, 43. Watkins on Descent, 169.
Third. Where the same use is limited to the owner of the estate, which would have resulted to him, in case no declaration of that use had been made, the declaration is void, and he takes it as a resulting use. Cruise on Uses', 197. The leading case is Reade v. Morpeth, Cro. Eliz. 825, and Moore, 284. (by the name of Fenwick and Mitford.) Jlnthony Mitford, being seized in fee of the estate, conveyed the same to the use of his eldest son Jasper, and Margaret his wife, and of the heirs male of the body of Jas *175 per, remainder to the use of the right heirs of .Anthony. It was unanimously resolved, “ that the use limited to the right heirs of Anthony,, was the ancient use in him, and was never out of him, and was in him as a reversion to grant or charge, and should descend from him to his heirs, as if it had not been mentioned, and that the limitation to his right heirs was void, being no more than the law vested in him;” and this rule takes place in all conveyances to uses which operate without transmutation of possession, as a covenant to stand seized, or bargain and sale, where the use arises out of the estate of the bargainor and covenantor. For in these cases, so much of the use as the covenantor and bargainor does not dispose of, still remains in him, as his old estate, and is usually called a use by implication. Cruise on Uses, 198.
Fow th. It is aclear principle, that a use cannot be limited on ause. All subsequent uses are trusts, and as the trustees were to lease, receive the rents, pay .the taxes and ground rents, make repairs, and pay only the surplus to Thomas, and to him in person, the legal estate was necessarily vested in them to enable them to perform the trusts. If the trusts had been, to permit Thomas to receive the rents, and the deed had been a deed of feoifment, the use would execute in him, and he would hold the legal estate. The cases are collected by Sergeant Williams, in his edition of Saunders, 2 Saund. 11. Whether the use is executed in fee simple in the .trustees, (the whole use,)is to depend on the intention of the grantor, to be collected from the whole grant, and from the whole scope and plan of the instrument. A clear, definite, and unambiguous intention is demonstrable to execute all the uses in the trustees; to leave in Thomas no use, or remnant of the old estate, or grant to him any ulterior limitation. Maintenance for life, provision for his children) if he left any, and if he did not-leave any, then to his-heirs, to devest himself of every dominion and ownership, and to reserve not even a power to alter these trusts to himself, unless executed conjointly with the trustees, to effectuate this intention, could only be by vesting all the estate and all the uses- in' the trustees. These' were all within the view of Thomas, and intended to be provided for by the family settlement.
Fifth. The material difference between a bargain and sale in-fee, and a feoffment in fee, consists in this: the seisin of the fe»-offee is such as will serve a use declared to the feoffor himself, to the feoffee, or to a stranger, or to all of them;- but the sei-sin of the bargainor can only serve the use -which is bargained and sold to the bargainee, and the uses on a bargain and sale,can only be vested in the bargainee, and as such use is for a valuable consideration, bargained and sold to him, there is no possible seisin in the bargainor to serve any uses in abridgment of that previously conveyed to the bargainee; and as there can be no possibility of seisin in the bargainor after a bargain and sale,- the only way that the use, sold to the bargainee, can b© *176 avoided or abridged is, to annex a condition of entry to the bargain and sale,- on the happening of a particular event. Sanders on Uses, 321.
If there can be no further declaration of a use, because where the bargain and sale is in fee, the whole use is executed in the bar-gainee, it must follow, that, there can be no resulting use. If from the nature of the instrument there can be no express use declared to the bargainee, there can be no implied or resulting use. Gild. Uses and Trusts, 166, considering uses limited on uses as out of the statute, gives the reason. If a man bargains and sells his lands to A., to the use of 13., the statute cannot execute the use in B.: for by the bargain and sale, which implies a. consideration, there is a use in A., and before the statute it .was impossible that two distinct persons should have the use of the same land, and by the statute, the first use cannot be executed in A , since there could not be two plenary possessors, and the second use being contrary to the disposition to A., must be null and void: but the chancery, that looks upon the intent of the parties in conveyances, construes A. only as an instrument to take the legal estate, and that in conscience he is bound to.answer the trust to B., which he hath taken. Cruise on Uses, 97, is to the same effect. And Sugden on Powers, 10, says, the statute vests the legal estate in the bargainee, and the law will not advert to the trust declared in favour of any other, but chancery seized hold of this narrow construction, and accordingly determined, that he was in conscience a trustee, and should be compelled to eon • vey to cestui qae trust. The reason why on a feoffment, the fe-offee is in of. his reversion is, because no alteration is made of the reversion; and because the use never separates from the possession. Moor, 310, Englefield’s Case. Fearne, in treating this doctrine, explains the cases of Fenwick v. Milford and Pyhus v. Mitford, 1 Vent. 372. Penhay v., Hurrell, 2 Freeman, 231, 235, 238, and 2 Vern. 370, and puts the question thus: “where the conveyance to uses enures by way of transmutation of possession, as by fine or feoffment, &c., the use should result and be implied out of the seisin of the feoffees or assignees,” and says, on the strength of Lord Coke’s opinion, and the concurrent authority of Lord Chief Justice Hale’s opinion in Pybus & Mitford,] that as well in & fine or feoffment, as a covenant to stand seised to rises, so much of the use as a man does not limit away, remains in himself. 1 Fearne, 39. So the question turns on this hinge alone; did any use remain in the owner ? The whole use was executed in the bargainees. The whole estate vested in them and their heirs. There was no use executed in the bargainor by express limitation. There could be no use by implication or resulting use, for this is contrary to the very nature of bargain and sale in fee simple. A use was raised to the bargainees by the consideration; for even in a feoffment, where there is a consideration to raise a use to the feoffee; there can be no resulting use to the feoffor. It is not the case of the limitation of a *177 particular estate in the use, and a remnant of the old estate limited to his own right heirs. The seisin was not the same. In fact, there was no seisin in Thopias; the use to the trustees fell into the possession. There is, in contemplation of law, a distinction between the- legal fee,' or possessory right of inheritance, and the equitable- right of inheritance. A man may make a conveyance without parting with the actual possession: and though the legal right passes from him, it will be revested in him as his old use. But if he part with the legal fee, the law considers him as having another seisin.
The legal estate vested in the trustees: the law does not acknowledge the trust. But chancery acting on the consciences of the trustees, would compel them to convey to the right heirs of Thomas; that is, persons answering that description at his death, without children living. From all these considerations, the conclusion is manifest, that if a man absolutely part with both the legal estate and the use, an estate afterwards limited to him or his heirs, must necessarily vest in them by purchase. So, .had he passed the legal estate in trust for himself or his heirs, such trust-would be a new acquisition. Watkins on Descent, 182. We have seen, that the statute could not execute the use to Thomas, because the whole use was in the trustees. The case of Fenwick & Mitford, when its principle is fully considered, does not apply to this conveyance. Lord Coke, Co.Lit.22, gives thereason of that decision'; “and all this was adjudged in Fenwick & Mitford. For if the limitation had been to the use of himself for life, and after to the use of another in tail, and after to the use of his own right heirs, the reversion in fee had been in him; because, the use of the fee continued ever in him, and. the statute doth execute the possession to the use in the same plight, quality and degree, as the-use was limited.” But herb the quality of the estate was altered. The statute could not execute the possession to the use in Thomas, because it was executed in the trustees, and there could not be two plenary possessors. The use was in them, and the possession fell in with the use.
A bargain and sale is a real contract, whereby a person bargains, and sells his lands to another for a pecuniary consideration, in consequence of which, a use arises to the bargainee, and the statute of uses immediately transfers the legal estate and actual possession to cestui que use, without any entry or other act on his part. 2 Inst. 672. What then was the intention of the trust? No man can read the conveyance and doubt of the intension: not a manifest implication, but a positive declaration: a trust not contrary to the policy of the law. Here the trust is co-extensive with the legal estate in the land. It is to be considered as the real estate, and the trustee the legal owner, as to the cestui que trust, and all claiming under them. Burgess v. Wheate, 1 W. Bl. 123. The intention of the parties to the trust chiefly governs. Bac. on Uses, 79.
It is a doctrine of the feudal tenure, and is founded on that alone, *178 that a man cannot make his right heirs purchasers. But trusts are mere creatures of confidence between party and party, and totally distinct from the legal estates, which are the subjects of tenure. They are in their nature independent of tenure, and, therefore, not the objects of those laws which are founded in the nature of tenure. They are rights arising solely out of the intent of the party who created them, and, therefore, such intent can he the only guide in executing them. 1 Fearne, 89.
The object of this deed was, to protect Thomas and his children, and those who, at his death, answered the description of his right heirs, from any improvident disposition he might make. He was not intrusted to receive the rents; the trustees were to pay them personally over to him. Could it be, that he should retain the power to dispose of the estate in fee, on the event of' his dying without issue? To prevent this, it was necessary that the trustees should absorb the whole estate. These purposes could only be answered by altering the whole estate. It was not a mere change of it from a legal to an equitable quality, leaving an undisposed remnant with the same estate and interest, exactly as the old estate, and disposable by the same means. For it effected a radical change, varying and restraining his disposing power. The approbation of the trustees, testified in a very formal manner, was required to any disposition of the estate, of all, and every part of the estate, which proves the intention in the approbation of the trustees. For the court will rather say, the use is not executed in Thomas, because the approbation of the trustees is made necessary, than that the approbation of the trustees is not necessary, because it is executed in him. Thomas meant that some control should be exercised over his right to dispose, and that control could be only exercised in the character of trustees; and if in the character of trustees, the legal estate, co-extensive with that power of control, must be vested in the trustees. If there was in this State a Court of Chancery, then the right heirs of Thomas, provided he made no valid disposition of the estate, could have filed their bills, and compelled a conveyance from the trustees; and if this had been decreed, the legal estate would have vested in them by purchase, and would not follow the old use, even had such use existed in the father. Watkins on Descent 133. The equitable action of ejectment is substituted for the bill in chancery, and there is .a rule in equity, that whatever ought to be done, is considered as done. Where there is no Court of Chancery to compel it to be done, the rule must be adopted as a universal maxim, to prevent a total failure of justice; and very many of the titles to lands in Pennsylvania rest on this principle. Indeed, unless it is received in its full force, there would be an end of all our equitable system, for it is on this fiction its whole foundation rests. Even where there is a Court of Chancery to compel the act to be done, the court will consider it in that light, in favour of all those who have a right to pray it may be done. This rule is, *179 that as between the parties who stipulate what is to be done, or those who stand in their place, it shall be considered as done. Burgess v. Wheate, 1 W. Bl. 123. This was the opinion of Sir Thomas Claeke, Master of the Rolls, in considering this very question. All the estate and interest passed by the bargain and sale. The whole estate was- made the subject of settlement: not particular estates, or particular uses. No remnant left in Thomas, to be disposed of by him, but all settled on the trustees. The bargainee took the whole legal estate, and all ulterior uses operate as mere trusts in equity. Sugd. Pow. 326.
But this is to be considered in another point of view. Admit it to be a conveyance in fee to trustees in trust for Thomas and his heirs, or the use executed in the trustees, as bargainees, and not in Thomas by the common law; “provided, that it shall and may be lawful to,. and for the said Thomas Fromberger, with the consent and approbation of the said trustees, or the survivor of them, or the heirs of such survivor, by any deed -under their hands and seals, duly executed and ácknowledged, to grant and convey all and any part of the premises hereby granted, unto such person or persons, and for such uses and estates, as he, the said Thomas Fromberger, with such consent and approbation, as aforesaid, may direct, limit and appoint,” Is there any rule of law forbidding this restraint? Powers are of two kinds, enabling, and restraining. The former is, where the owner of an estate conveys it to trustees, reserving a power to himself to revoke, alter, enlarge, or diminish the trusts declared, which power is reserved to be executed under particular circumstances only,and under certain restrictions, and it is called a restraining power, because he who is the owner of the land, and might alienate it by any mode of legal conveyance, does by the instrument by which he conveys his estate to trustees, subject to such power, confine himself not to alienate by any other means, or under any other circumstances, than those which, by the terms of the power he prescribes to himself. Powell on Powers, 6. He could restrain himself, and had, as owner, the fight to settle it as he pleased; to order for himself. It was no matter, whether he had a reason for making it so or not, stetpro ratione voluntas. And when he had done so, both law and reason bohnd him to observe it, and no court could avoid it. What was said by Hale in Bath v. Montague, 3 Ch. Cas. 107, 108, applies ad hominem. Besides, as he observed, “ there might be a very good reason for a man to put such restraint upon himself, (and for a wise man to do’so too): for a man might know the frailty of his own temper, how apt he might be, to be surprised and prevailed on to make a precipitate or inconvenient will, settlement or disposition of his estate: then, to restrain this-inferiority, which he was conscious of, and to prevent an inconveniency which might arise by his disposing his estate upon surprise, he would restrain himself, and settle his estate so and so. If there were a deliberate *180 intention in him to alter it, he might solemnly execute such intention; he might have so many witnesses, and those of good quality, that if they found him about any such action might advise him in it, and prevent any surprise in the doing of an act that might be foolish, rash, or prejudicial.
So conscious was Thomas Fromberger of his infirmities, that he parted with the legal fee, the possession, to the defendants: that he reserved to himself a fair maintenance; and so little did he confide in himself, that having settled the whole estate, he would not trust himself with any power to alter that Settlement, but with the consent and approbation of those whom he had made the legal owners, and that consent and approbation testified by a very deliberate act. The conveyance to the trustees was, with a manifest and plain intention to give them the whole legal estate, to support all the limitations and trusts in the deed to Thomas, maintenance out of the rents during his life, remainder in tail to his children, or in fee, and if he died without children, or issue of any child, living at his death, remainder, with a contingent or shifting use, to his own right heirs. The deed a mere conduit — the trustees were instruments in the conveyance, (though for the purposes of upholding the trusts, legal owners,) to conduct all the dispositions to their final consummation, to preserve and lead them along in the course marked by the deed: and equity, to whom the cognizance of trusts exclusively belongs, will never suffer a change of the trusts, where the legal estate is conferred on the trustees. Hopkins v. Hopkins, 1 Atk. 581.
The smallness of the consideration, as to vesting the whole use in the trustees, can form no objection. For any consideration, if it be the most trifling, will serve to raise a use on a bargain and sale: as five shillings, 2 Roll. Ab. 737, 788; or the reservation of twelve pence, 10 Co. 84, A., or a pepper corn, 1 Mod. 262; 2 Mod. 252, are good considerations to support a use on this conveyance. Still, however, if the consideration be merely nominal, and a part of the use only be limited away, there would be a trust as to the undisposed part. But here the estate is conveyed to the trustees, to hold to them and their heirs. It is a settlement of the whole estate, in trust, which in- default of appointment, is to pass to the right heirs of Thomas, not by way of use, nor as the reversion or reservation of the old estate by the common law, but by conveyance from the trustees. Without such conveyance, no ejectment could be supported -in England. This clearly shows, the heirs take it not as part of the old estate undisposed of, but a new estate: for if they take it as such, they required no conveyance from the trustees. It descended to them as the legal estate, by the common law. It follows, from this view of the subject, that Thomas Fromberger could not change the trust, unless in the way prescribed by himself. This was a law he had put upon himself, from which, a court of law could not release him, and this legal obligation would be *181 equally binding in equity, because done by his own consent. I have been more tedious than I intended, and have consumed so much time in the first inquiry, which with us, is a question of some novelty, that I must hasten over the remaining questions, which are of less general importance, and certainly of less difficulty.
It is conceded, that if the power be defectivetly executed, the parties being all volunteers, and standing in equal equity, chancery could grant no relief, nor remedy the defect. Nor does it make any difference, whether it is a restraint by the owner, on his own right, or a power to be executed by him on the property of others. The owner is his own legislator. He may impose on himself what terms he pleases. The province of the judge is, not to inquire whether the circumstances required are important or insignificant, essential or ceremonial, reasonable or unreasonable, but what they are. Whatever disposition Thomas Fromberger is empowered .to make, whether by deed, will, or other writing, must be with the consent and approbation of the trustees, or the survivor of them, or the heirs of such survivor, by some deed, under their hands and seals, duly executed and acknowledged, and with such consent and approbation, he is empowered to grant and convey all or any part of the premises for such uses and estates, as he, with such consent, may limit and appoint. Where forms are imposed on the execution of a power, the circumstances must be strictly adhered to: and where a man imposes them on himself, the court cannot dispense with the forms and solemnities he has required. To do so, would be to deprive a man of the bridle he has thought proper to. impose on his weakness or frailty of mind, to take from his friends the reins he has put into their hands, to restrain him in his moments of intemperance, folly, and thoughtfulness, from making beggars of his children, and stripping his heirs of that which came to him from their common ancestor. The circumstances may be perfectly arbitrary, unessential in point of effect, to the validity of the instrument by which the power maybe exercised: but being required by the creator of the power, they can only be satisfied by a strictly literal and precise performance, and without recapitulating the cases in which it has been decided, there must be this literal adherence, it may' be said, that in every ease the ingenuity of man can devise, the terms of the power must be strictly complied with.’ Sugden’s Powers, 211, 213. The material construction is, that the instrument of grant and conveyance should be by deed, and the contemporaneous and joint act, both of Thomas and the trustees. Their hands and seals, can refer only to a joint execution by all. The proviso cannot in any other way be rendered sensible in all its parts. For if, as to the deed, Thomas is not comprehended, and one of the trustess had died, it could not be executed by deed under their hands and seals. By the death of one the power would be extinct. When it is expressly declai’ed, that the consent and *182 approbation of the survivor would be sufficient, to be under their hands and seals, in that case, can mean nothing else than the hands and seals of the grantor and trustees, if both be living; if one be dead, then under the hands and seals of the grantor and the survivor. Besides,-if executed by will, which is in its nature revocable, with the consent and approbation of the trustees by deed, the power would be completely executed, and at an end, there being no power of revocation in the deed. For a person only having an authority cannot annex a power of revocation, when he executes it, Vern. 355. An authority once well executed, cannot be executed again. 5 Mod. 437. For where the power is executed by deed,' unless a power of revocation be reserved in the deed, the appointment cannot be revoked. No, not even if the original power expressly au-thorised the donee in the most unlimited terms to appoint and revoke the appointment from time to time. For the law will not endure a prospective power like this, but on every execution a new power must be reserved. 2 Freem. 61. Hele v. Bond, Prec. Ch. 474. A power executed by the trustees’ approbation by deed, could not be revoked, and if, as here, it was coupled with an interest, it could not be revoked, unless it contained, a clause of revocation. The will in its nature revocable, would thus be rendered irrevocable. But if the construction be doubtful, there are other objections to the execution of the power, insurmountable objections. For if Thomas Fromberger could execute the power by will, still, as to the new uses, the consent of the trustees by deed executed and acknowledged by them, is required, and this should be previous to or concomitant with the will But it is quite clear, that the deed testifying the consent and approbation of the trustees, must be at least executed in thé life time of Thomas Fromberger. The estate must vest according to the new uses, eo instanti Thomas died, or would go according to the old trusts. The deed giving consent and approbation must be executed in his life time, if not acknowledged. No subsequent ratification could, by relation, validate the appointment. The deed executed after the death of the appointee, which was made essential to the execution of the power, would form no part of its execution. That act could not be said to be done with the approbation by deed of the trustees, when the actor was dead before its execution. It could have no ex post fac-to operation. If subsequent ratification would validate the will, it might as well be done at the end of twenty years, as twenty days, and the estate continue in abeyance, which the law will not suffer. The appointment was, therefore, defective, and Thomas having .no other right of disposition than the power he had reserved, and that not being conformed to, it is as if he did it without power.
In our last inquiry, the difficulty arises from the want of adequate chancery powers, and this court have, on various occasions,been distressed in the distribution of the wife’s real estate, converted by the act of the law, into personal. For if the husbands of these two feme coverts who have brought this action, came into a Court *183 of Chancery against the trustees, for the trust money arising from the sale under the decree of the Orphans’ Court, that court, where there was such, would be the only tribunal.
Here there is no such authority exercised by the court. ■ Chancery would compel a reasonable settlement on the wives. But that would be no reason why the trustees should retain the money or pay it over to the devisee of Thomas. For our administration of justice is not so very defective, that the money arising from the sale of real estate, settled by deed of trust, but changed into personal, by the decree of a court of competent jurisdiction, should remain without an owner, and become an escheat in the hands of the trustees. The trustees were the only hands who could receive the money on the sale. They have considered it, and now consider it as trust money. There is no difficulty in following it, and the court are of opinion, that the present plaintiffs, the husbands suing jointly with their wives, are entitled to this trust money. It is impossible to distinguish the case from Barnet v. Yohe. , Both cases were under the same system. There, as here, had the estate remained in land, as it was the inheritance of the wife, the husband would be only entitled to a life estate. But the law having changed its character, she took; consequently, her husband took it in the character of money. The husbands would not have taken it as personal estate, if the -wives had died before the sale. For at most, they would only take, as tenants by the curtesy, a life estate, the interest of the money during life, and the principal would have gone to the heirs of the wives, and not to their personal representatives. For where lands have been directed by order of the Orphans’ Court to be sold for payment of debts, the widow would not be entitled to a third of the surplus absolutely, hut the interest of a third during life. Diller v. Diffedoffers’ Executors, 2 Yeates, 261. Yet tire husband, it being personal estate in the wife’s life time, would take it as personal estate. So, if the estate which the wives inherited from the father, had been sold for payment of his debts, either by the sheriff, or by order of the Orphan’s Court, in their life times, the surplus money would be the husbands.- So here, if Thomas’s inheritance had been sold for payment of his antecedent debts, the money would come into the hands of the trustees, subject to the same trusts as the land was. The surplus of a real estate in trust, sold by a decree in Chancery, for payment of debts, or any other purpose of the trust, like the rents and profits, is disposed of as the original trust. It is part of the ancient trust. Wyth v. Blackman, 1 Ves. 197. An executor, who receives the surplus proceeds of land sold on an execution, is chargeable with them, in account as executor, notwithstanding he is husband of the devisee, and claims to have received in that character; because it cannot be easily known what debts against the testator remains unpaid; and if paid over to the heir or devi-see, and then if other debts appeared, there would be a necessity *184 for new suits and executions for the purpose of selling other lands, by which the estate would be subject to heavy costs. But if there are no debts to pay, or the executor be insolvent, the court will order the surplus to be paid to the heir or devisee. Guier, Executor of Cooper v. Kelly and wife, 2 Binn. 298.
On a very perplexed settlement, on which a question arose, how money was to be treated, whether as money' or real estate, the Chancellor said, that it was a very particular case, and an extraordinary limitation and disposition of real estate; but the court ,must make such construction as appears agreeable to the intention of the donor and creator of the trust; and whatever doubts there might be in the case, whether to be taken as real or personal estate, yet as all parties submit to have it considered as personal estate, not of the original donor, but of the parties, who take it under him, they may so take. And where money would in chancery be considered as land, and where there is no tenant in tail, a person sui juris may come into court, and have it decreed as money. But in case of a feme covert, it shall be laid out in land, unless some other act was done by her analogous to a fine at common law, by her coming into court to be separately examined, and then if she declared her assent to have it money, without the influence of her husband, the court would so decree it. Cunningham v. Moody, 1 Vez. 176, and Trafford v. Boehm, 3 Atk. 440. In the last case, Lord Hardwicke observed, that if the parties interested, agreed that the money should. not be of the quality of land, then it was discharged of that quality. So far as respects the house in Fromberger’s Court, the trustees have, done exactly what a Court of Chancery would have directed to be done, invested the money in real estate, declaring the purchase to' be with trust money for the same uses and trusts as were declared by the original conveyance and settlement. Trust money may be followed into land. Here, the house, a part of the estate conveyed to trustees, was restored to them in the character of trustees, in its original condition, and reinvested in them’ as their old estate. The court are of opinion, that the plaintiffs are entitled to a portion of the house and lot in Fromberger’s Court, and to a portion of the personal estate, and that judgment be entered for them: the terms to be settled by the attornies of the parties. So far as relates to these claimants, it matters not, whether the money be considered and treated as real or personal estate. The remote possibility of the sisters dying without issue, and without disposing of it, is of no weight.
On the first inquiry, I will add one further observation. If all the uses were executed in Thomas, then he would be tenant in tail, with reversion to himself in fee, and all his estate would be of the same nature, and might defeat the whole settlement. For if a person is tenant in tail, reversion in fee to himself, by a common conveyance, he may bar the entail and reversion. So that this forms an additional reason for the construction I have given to this *185 conveyance. See Trafford v. Boehm, 3 Atk. 447. And if the trust to the children was construed a use in fee, subject to a secondary, a springing use, on an event seasonably determinable, viz: the death of Thomas without leaving children or issue living at his death; then the right heirs of Thomas would not'inherit by the common law, and they could not take by a shifting in futuro use, if the children of Thomas would have taken in fee simple; for no such use could be limited on a bargain and sale. For this use cannot arise out of the estate of the bargainees, they being merely ces-tuis que use, nor can arise out of the original seisin of the bargainor. For, after the bargain and sale, there could be no possibility of sei-sin remaining in him. Sanders U. & T. 155. And when a use is spoken of as arising out of the estate of the bargainor, it is where the bargainor has not parted with the fee, but only granted an estate for life. But where the bargain and sale is to the bargainee in fee, the use in the fee is executed in him,- and as there can be no express use to the bargainee, so there can be no resulting use, or use by implication, as there is on a feoffment.
The distinction is very evident. For if a man bargains and sells to one for life, remainder to the first son of the bargainee, (which first son is unborn at the time of the conveyance,) - this is a good limitation of the use to the first son, to take effect out of the estate of the bargainor. For in this case, the possession of the bargainor was only executed in the bargainee for life; so that the reversion in fee remained in him, out of which, he might limit the uses to the first son of the bargainee: the consideration by the bargainee, might well extend to the uses limited to his son. Sanders, U. & T 324.
Whenever a declaration of uses is mentioned, it must be understood of such conveyances as operate by transmutation of possession. For from the nature of a bargain and sale in fee,, there can be no further uses declared. For if, after the statute of uses, by deed of bargain and sale, one bargain and sell his lands to another in fee, for the use of the bargainee for life, or in fee, to the use of a stranger, such use limited over, would be void: because the nature of the transaction and price paid, implied therein a use to the vendee, viz: the first cestui que use, and, therefore, the limitation to the use of another, was repugnant; for thereby the use in fee, which was in the bargainee in respect of the consideration, would- be taken out of him, and earned over to another without consideration. It, therefore, became a maxim of law, that a use or trust could not be limited out of a use or trust, before limited. Courts of law have steadily adhered to this maxim: and courts of equity seized with greediness-this opportunity to re establish their jurisdiction over property, by giving effect to these uses or trusts, as affecting the conscience, and so the proper subject of jurisdiction of courts of equity. Therefore, wherever a use or trust arises out of land, there the use will be executed by the statute, and the legal estate vested* *186 but where the use arises outo f a preceding use, which arises out of land, there the statute will not attach, and the use is retained by-equity only under the denomination of a trust. Powell’s Devises, 288. The remainder to the right heirs of Thomas, gave them only an equitable estate, an equitable remainder, in which those persons who, at his death, should come within'.the description of right-heirs, would take, and the estate executed in the trustees would support this remainder. All subsequent limitations were trust estates. •
If the last limitation to the right heirs had been a legal one, the heirs must h'ave been in by descent. But-being a contingent equitable remainder, they took as purchasers, answering the description of right heirs.
Judgment for the plaintiffs.