## COUCH v. ADDY *et al.*

No. 3748.   Opinion Filed December 3, 1912.

Rehearing Denied January 28, 1913.

(129 Pac. 709.)

1.   **DEEDS—Definition.**  A deed is defined to be a written instrument containing a contract or agreement, which has been delivered by the party to be bound, and accepted by the obligee or covenantee.

2.   **SAME—Validity—Delivery—Acceptance.**  To constitute a valid deed, not only must there have been an intention on the part of the grantors to deliver, but the grantee must accept the same in person, or by some one whom he has authorized to accept for him, or whose conduct he subsequently ratifies.

3.   **HOMESTEAD—Deed—Delivery Without Consent of Wife—Effect.**  Where husband and wife sign a deed to the homestead of the family under an agreement that the same shall not be delivered to the grantee named therein, and the husband, without the consent of the wife, delivers the deed to the grantee, who has notice of the agreement, the deed may be avoided by the wife after the death of her husband.

(Syllabus by the Court.)

*Error from District Court, Woods County;*
*R. H. Loofbourrow, Judge.*

Action by Fannie F. Addy and Charles M. Delzell, administrator of the estate of Wm. Addy, deceased, against Larkin S. Couch.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

*T. J. Womack,* for plaintiff in error.

*Rush & Smith* and *Chase & Stevens,* for defendants in error.

KANE, J.   This was an action, commenced by Fannie F. Addy, wife of Wm. R. Addy, to avoid an instrument in writing involving title to the homestead of the family, and to clear the title to the same.   Upon trial to the court there was a decree in favor of the plaintiff, granting the relief prayed for, to reverse which action this proceeding in error was commenced.

The land in controversy was proved up by William R. Addy, under the homestead laws of the United States; and the court, properly we think, held that at the times hereinafter mentioned it retained its homestead character.

It seems that William R. Addy was addicted to the excessive use of alcoholic liquors, and at times there were periods covering months in which he was incapable of transacting any business. That for two months immediately prior to the date of the contract hereinafter set out he had been on one of those periodic sprees, during which time he had squandered a great deal of money. That on the 15th day of June, 1903, the day the instruments were signed, his wife found him at Cleo, a town in Woods county, where, after some conversation between husband and wife concerning their homestead, they entered into the following agreement:

"This article of agreement entered into this 15th day of June, 1903, between W. R. Addy, party of the first part, and Fannie F. Addy, party of the second part, witnesseth: The said party of the first part by and with the consent of the party of the second part hereby agrees to execute a warranty deed to the west half of the southwest quarter of section eighteen (18), in township twenty-four (24) north of range nine (9) west to Thomas E. Addy of New York City, and also to execute a warranty deed to the east half of the southwest quarter of section eighteen (18), township twenty-four (24) north of range nine (9) west to Elida Buck of Wichita, Kansas, said deeds to be held in escrow by said grantees and placed with this article of agreement in the custody of the cashier of the Farmers' State Bank of Cleo, Oklahoma, to be held by him until such time when the above-described tracts of land shall be sold, or to be surrendered up to said parties to this agreement upon their joint demand, and that at the instance and request of the parties, or either of the said parties, to this contract said deeds or either of them, or this said article of agreement, shall be sent to the register of deeds of Woods county, Oklahoma, and there placed on record.

"Parties to this article of agreement further agree that when the said lands above described shall be sold that they will share equally in a division of the proceeds with the exception that party of the first part is to pay one hundred dollars ($100.00) in cash to party of the second part over and above her half of the proceeds. It is further agreed by the parties to this article of agree-

ment that both of the above tracts must be sold at the same time and not separately.

"Party of the first part hereby agrees with party of the second part that after the sale of the above-described tracts that if either party shall buy property with the proceeds of the sale of said land the other party shall have a joint interest in said property so bought by paying his or her half of the purchase price of said property. This article of agreement to remain in full force and effect for a period of one year from date thereof, unless rescinded by mutual consent of both parties to said article of agreement.

"Witness our hands this 15th day of June, 1903.

                              "William R. Addy.
                              "Fannie F. Addy.

"Witnessed by: Peter T. Koop.
                              "D. Brown."

It appears that neither the Thomas E. Addy nor the Elida Buck mentioned in the agreement knew anything about the execution thereof or the deeds therein mentioned, and that they had no knowledge that they had been designated as grantees therein. Two or three months after the deeds and agreement were placed in the hands of the cashier of the Farmers' State Bank of Cleo, as provided therein, William R. Addy withdrew the deed to Thomas E. Addy and had the same recorded. Thereafter William R. Addy died; whereupon Charles M. Delzell was appointed administrator of his estate. On the 14th day of September, 1904, Thomas E. Addy and Bertha Addy, his wife, executed and delivered a deed of conveyance to Larkin S. Couch. During all this time Mrs. Fannie F. Addy had remained in possession of the premises, and the court below found, upon sufficient evidence, that all of the defendants Thomas E. Addy, Bertha Addy, his wife, Larkin S. Couch, and Elida Buck, had notice of all of the facts upon which the plaintiff based her right of recovery. By way of answer Elida Buck filed a disclaimer, Thomas E. Addy set up the deed heretofore mentioned, and Larkin S. Couch set up the deed to him from Thomas E. Addy and Bertha Addy.

Plaintiff in error presents his grounds for reversal as follows:

"(1) No contention being made that there was any fraud practiced in the execution of the deed and contract, or by either

of the grantees named in the deeds, the deed having been de-
livered in accordance with the terms of the contract, the transfer
became absolute. (2) There is no evidence which in any man-
ner contradicts the delivery of the deed. Being in the hands of
the grantee after being recorded, being accepted by him, there
must be positive evidence to show that it was not the intention
to deliver the deed. There is no such evidence in the record.
(3) That this deed was actually delivered was the finding of the
court; the court having held that it transferred the absolute title
to the plaintiff in error, except in so far as they conflict with
the homestead interest of the plaintiffs therein. The deed de-
livered for one purpose must be delivered for all purposes. This
is a pure mistake of law upon the part of the court."

At the outset, we think the court below and counsel were in
error in giving to the instruments executed by Wm. R. Addy
and his wife to Thomas E. Addy and Elida Buck the status of
deeds. A deed is defined to be a written instrument containing
a contract or agreement, which has been delivered by the party
to be bound, and accepted by the obligee or covenantee. *People v.
Watkins,* 106 Mich. 437, 64 N. W. 324; *McMurtry v. Brown,*
6 Neb. 368. At least two of the essential elements of a deed are
lacking in the present transaction: (1) It is apparent on the face
of the agreement between Wm. R. Addy and his wife that at the
time of the execution of the deeds neither of them intended to
sell the land to the grantees mentioned therein; and (2) neither
of the grantees had any knowledge that the deeds were executed,
and there is no evidence that either of them ever accepted the
transfer to them within the life of the contract between Wm. R.
Addy and his wife. It is true that by the terms of the contract
they "agreed to execute warranty deeds" to the parties therein
named; but that they did not intend the transaction to constitute
a sale, or that the deeds should convey title or be delivered to
the grantees therein named, is apparent from the subsequent
language of the agreement, to the effect that the deeds and agree-
ment should be placed in the hands of the cashier of the Farmers'
State Bank of Cleo, "to be held by him until such time when the
above-described tracts of land shall be sold, or to be surrendered
up to said parties to the agreement upon their joint demand, and
that at the instance and request of the parties * * * to said

agreement said deeds or either of them, or this  *  *  *  agreement, shall be sent to the register of deeds of Woods county, Oklahoma, and there placed on record." In construing this contract it must not be forgotten that the parties to it were Wm. R. Addy and his wife, and that the grantees named therein had no knowledge of it, its execution, or its contents. Further, the parties agreed that when the above land was sold they would share equally in a division of the proceeds, with the exception that the wife was to receive $100 over and above her half of the proceeds, and that both of the above tracts must be sold at the same time and not separately; and, further, it was agreed what should be done after the sale, in case either party should buy property with the proceeds of the sale. And, finally, they agreed that the contract should remain in force and effect for a period of one year, unless rescinded by mutual consent. The foregoing provisions of the contract are absolutely irreconcilable with an intention to sell the land to Thomas E. Addy and Elida Buck. It is too clear for controversy that the purpose of Wm. R. Addy and his wife, in so far as it is disclosed by their contract, was to sell the land to some one other than the grantees named in the deeds, if it could be done within the life of the contract, and divide the proceeds between themselves in conformity with its provisions. Moreover, the abstract of the evidence contained in the briefs of counsel for the respective parties does not disclose when the deed delivered to Thomas E. Addy was delivered, or when he accepted it, if at all, or whether delivery and acceptance, if such there were, occurred during the life of the agreement. It is well settled that to constitute a valid deed not only must there have been an intention on the part of the grantors to deliver, but the grantee must accept the same in person, or by some one whom he has authorized to accept for him, or whose conduct he subsequently ratifies. *Powell v. Banks,* 146 Mo. 620, 48 S. W. 664; *Meigs v. Dexter,* 172 Mass. 217, 52 N. E. 75.

Section 880, Wilson's Rev. & Ann. St. 1903, provides that no deed or mortgage or other contract relating to the homestead, other than a lease not exceeding one year, shall be valid, unless in writing and signed by the husband and wife, where they are

living and not divorced, except to the extent hereinafter provided. And section 883 provides that if the husband shall make any deed, mortgage, or contract relating to the homestead without being joined in by the wife he shall be concluded thereby, and it shall only be avoided by the wife. If, after the agreement entered into by Wm. R. Addy and his wife, the husband delivered the joint deed to a part of the homestead; contrary to the terms of the agreement, his action cannot bind his wife, who did not agree to the delivery, whatever effect it may have had in concluding the husband. Under the last section of the statute above cited, the wife, after the death of the husband, was at liberty to avoid the deeds in a proper action, and this she has attempted to do.

As we find no reversible error in the proceedings had in the court below, the judgment must be affirmed.

All the Justices concur.