[Civ. No. 39603. Second Dist., Div. One. Aug. 29, 1972.]

BERNICE PLACE, as Conservator, etc., Plaintiff and Respondent, v. JAMES R. TRENT, Defendant and Appellant.

## COUNSEL

Blumberg & Zommick and Myron Blumberg for Defendant and Appellant.

Hope I. Case and Elsie M. Farris for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—On August 28, 1967, following due notice and hearing, plaintiff was appointed conservator of the person and estate of Betty E. Trent (conservatee), letters of conservatorship having been issued to her on September 7, 1967; three days later (September 10), no consideration having been paid therefor, the conservatee conveyed certain real property to de-

fendant Trent, her nephew, reserving unto herself a life interest therein. Upon defendant's refusal to restore title to the conservatorship estate, suit was instituted by the conservator to cancel the instrument of conveyance and to quiet title against defendant. Defendant appeals from judgment quieting title in plaintiff.

■    Although other subsidiary contentions are raised, the primary issue is whether the conservatee, acting alone and without the consent or approval of the court or the conservator, is empowered to execute a valid conveyance (by deed of gift) of conservatorship property. Appellant contends that since the conservatorship was requested and was, presumably, ordered because of his aunt's "advanced age" and "physical condition"[1] without any finding of "mental weakness" on her part (Prob. Code, § 1751), she was not thereby divested of the power to contract in the foregoing manner.[2]

The first subsidiary claim is that no valid conservatorship was created by the court's order of August 28, 1967, because the order recites that "Bernice Place" (not Betty E. Trent) was unable unassisted to manage and take care of herself or her property. ■    The order was amended *nunc pro tunc* to reflect the true fact; although the correction was made on March 8, 1971, following the institution of this appeal, it is established that the right of a court to correct a clerical error in its judgment by a *nunc pro tunc* amendment thereto is not suspended by an appeal therefrom. (*Lang* v. *Superior Court,* 198 Cal.App.2d 16, 18 [18 Cal.Rptr. 67].) ■    As declared in *Carter* v. *J. W. Silver Trucking Co.,* 4 Cal.2d 198, 204 [47 P.2d 733], "All courts have the inherent power to correct their records so they shall conform to the facts and speak the truth, and that right is not suspended by an appeal from the order nor because the record itself does not show that the entry was incorrect." ■    Too, "The right of a lower court to amend its record to conform to the truth is not suspended or impeded by an appeal, where the amendment does not affect any substantial rights of the appellant, and consists of the correction of a clerical mistake appearing upon the face of the record." (*Halpern* v. *Superior Court,* 190 Cal. 384, 387 [212 P. 916].)

■    Likewise without merit is appellant's second contention advancing

---

[1] The quoted language is that of conservatee's attending physician to the effect that the then "proposed conservatee" would be unable to attend the hearing. (Prob. Code, § 1754.)

[2] The petition for letters of conservatorship is not made a part of the record; however, the order appointing the conservator (corrected *nunc pro tunc*) recites in pertinent part that "said Betty E. Trent is unable unassisted to manage and take care of herself or her property," no mention being made of "mental weakness" or any of the other disabilities set forth in the statute (§ 1751, *supra*).

the position that since plaintiff-conservator failed to apply for permission to institute the instant action, as provided by section 1853, 'she acted thereafter without authority and, therefore, had no standing to sue. Authority to "institute and maintain all actions" is one of the additional powers which the court may grant if the conservator chooses to apply therefor; such powers, as the statute further provides, "shall be in addition to the general powers of conservators." Since conservators are invested with the powers granted to guardians of incompetents (Prob. Code, § 1852), we look to section 1501, Probate Code: "Every guardian . . . must demand, sue for, and collect all debts due to the ward"; additionally thereunder, "He must appear for and represent his ward in all actions and proceedings, unless another person is appointed for that purpose." Without deciding whether the above enactments, construed together, require our rejection of the instant claim, we note that section 1853 provides for the exercise of such additional powers "with or without notice, hearings, confirmation, or approval of the court. . . ." Except for the formality of filing an application which needed no court approval, this appears to have been precisely what was done by the conservator, presumably to gain an advantage by not giving advance notice to the prospective defendant in an adversary proceeding who could have initiated further transfers of the property following the transaction of September 10, 1967. Too, despite noncompliance with the above formality, the conservator can still petition the court for approval and confirmation of her acts in the management and protection of the conservatorship property (Prob. Code, § 1860). If it is determined on this appeal that title to the property was properly quieted against defendant's claims, any subsequent order under section 1860 would be within the court's powers under the provisions of that statute. (See *Conservatorship of Harvey*, 3 Cal.3d 646, 650 [91 Cal.Rptr. 510, 477 P.2d 742].) Neither expressly, nor impliedly, is there any language in the above legislation which nullifies the action here taken.

We come now to the principal question. It was thus propounded to the trial court by conservatee's counsel: Betty Trent herself signed the petition which alleges that she was of advanced age; because of age, as well as her physical condition, she was unable to care for herself and her business affairs and her estate. Quoting her counsel, "A person can be of sound mind but physically disabled because of age . . . [nevertheless she] does not lose the capability to form an intent to execute and then actually to execute with a competent mind and to deliver a deed, and that is what this case is, your Honor." For the following reasons, we concur in the trial court's determination.

"The sole purpose of a conservatorship is to provide a competent

person to act, under the guidance of the probate court, as the agent of the conservatee." (*Conservatorship of Stewart,* 276 Cal.App.2d 211, 214 [80 Cal.Rptr. 738].) ▮ As such agent, by statute he is given all the powers of a guardian (§ 1852) which include "the management of his [ward's] estate" (§ 1500); consistent with such powers, he is directed to file with the court, within three months after his appointment, "an inventory and appraisement of the estate of the conservatee" (§ 1901), and thereafter to perform other acts, for and on behalf of the conservatee, including the payment of the latter's debts incurred both before and (in certain instances) after the creation of the conservatorship; he must also "give a bond for the protection of the conservatee." (§ 1802.) All of the above provisions would be made meaningless if the claim, presently advanced by appellant, was adopted by this court. Simply stated, his claim is that regardless of the existence of the conservatorship, a conservatee is perfectly free to give away, by deed or otherwise, any or all of the property in the conservatorship estate either because she is mentally competent to contract or, otherwise stated, because there has been no finding of "mental weakness" or incapacity. An amendment to section 1858, *supra,* further militates against appellant's position. Enacted in 1963, it provides that the conservator shall pay debts incurred after the creation of the conservatorship if such debts are for necessaries of life; if such debts are not for necessaries, the conservator is directed to pay them only if the estate will not be impaired and only if they appear to be such that a reasonably prudent person might incur. There would, of course, be no need for such legislation if the conservatee had full power to contract; too, since the Legislature saw fit to interpose the conservator and the probate court between the conservatee and a party contracting with the latter on relatively minor matters, like necessaries, a fortiori (although by implication) a similar procedure should be followed when the transaction (as here) involves property worth $17,000 or thereabouts (surety bond in such sum having been ordered).

We are further of the view that for all practical purposes a conservator, in the case of adults, is merely a guardian under another name; we reach this view after an examination of comments appearing in 32 State Bar Journal 23³ and 585,⁴ before and after the passage of the governing legis-

---

[3]"This bill would add a new division to the Probate Code, creating and defining the office of conservator and the concept of conservatorship. Conservatorships would be an alternative to guardianships in some instances and would provide the benefits of a conservator in certain others wherein guardianships are not now permissible. Many elderly or ill persons are reluctant to ask that a guardian be appointed to conduct their affairs because of the label of 'incompetent' which attaches to them under the present law. The proposed legislation, by eliminating all reference to 'incompetency,' seeks to overcome this reluctance."

[4]"Division 4 of the Probate Code, which covers guardianship, provides that a

lation. We also note that the Senate Interim Committee, in the report recommending the adoption of the proposals submitted by the State Bar (fn. 3, *supra*), stated the purpose of the proposed enactments to be as follows: "A great many elderly or physically or mentally ill persons are reluctant to ask that a guardian be appointed to conduct their affairs because of the label of 'incompetent' which attaches to them under the present law. Often where the person affected is himself willing to have a guardian appointed, his relatives resist the suggestion for the same reason. For these reasons, there are in California today a great many people whose affairs should be given the protection of a guardianship but for whom such protection has not been sought. The proposed legislation, by calling the person requiring assistance a 'conservatee,' and the person appointed by the court to assist him a 'conservator,' and by eliminating all reference to 'incompetency' seeks to overcome the reluctance to use the protection which should be available under the law." (1 Sen. J. Appendix (1957 Reg. Sess.) p. 487.)

■ The above report is a most valuable aid in ascertaining the overall meaning of the numerous sections added to the code at the legislative session in question; hence, "In the absence of compelling language in the statute[s] to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the [committee] in its report." (*Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 397 [184 P.2d 323].) ■ We have already made mention of the amendment to section 1853; in that regard, it is established that "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." (*Cole* v. *Rush,* 45 Cal.2d 345, 355 [289 P.2d 450].)

■■ Appellant does not appear to contest the rule that one who is under guardianship is incapable of making a valid contract (*Hellman Commercial T. & S. Bk.* v. *Alden,* 206 Cal. 592, 608-609 [275 P. 794]);

---

guardian may be appointed only for three classes of persons: the insane, minors and incompetents [§§ 1403-1406]. Because of the stigma, many elderly people and their families hesitate to enter into guardianship, even though such an arrangement might be advantageous. In order to overcome this difficulty, the Legislature, with the State Bar's recommendation (32 S.B.J. 23 (1957)), added to the Probate Code new Division 5 . . . Where no specific provision of Division 5 applies to a given situation, guardianship provisions and provisions for the administration of decedents' estates will govern so far as they are applicable to like situations."

since, for reasons stated above, the same must be said of a person under conservatorship, the conservatee's deed to appellant was void.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied September 20, 1972, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1972.