Mary Naomi **LINDSAY**, Harold Dalrymple and Dorothy Zimmerman, Appellees,

v.

Joyce Dalrymple **GIBSON** and Virginia Lee Walton, Executrix of the Estate of Emery Dalrymple, Deceased, Appellants.

No. 52893.

Supreme Court of Oklahoma.

July 28, 1981.

Rehearing Denied Nov. 2, 1981.

David C. Butler, Butler & Shaw, Enid, for appellant executrix, Virginia Walton.

Samuel K. Barton, Shattuck, Edwin McComas, Elk City, for appellant, Joyce Dalrymple Gibson.

---

**22.** *Blue Bell, Inc. v. Farah Manufacturing Company, Inc.,* 508 F.2d 1260 (5th Cir. 1975).

Charles W. Wolfe, Billings, Wolfe & Billings, Woodward, for appellees.

DOOLIN, Justice:

We deal with questions of conservatorship under 58 O.S.1971 §§ 890.1–890.11 (the Act).

E. Dalrymple, being seized of interests in real property and subsequent to the issuance of letters of conservatorship over his affairs, conveyed his interest in the real property to his conservator and other siblings. The conservator and his sisters brought suit to quiet title to the real premises concerned against the executor of his estate and his sole and only heir at law, devisee and legatee Joyce Dalrymple Gibson. At the trial the district court quieted title in the conservator and sisters.

May the ward, conservatee (E. Dalrymple), make a gift conveyance (deed) to his conservator and others of property constituting a portion of the res?

We answer in the negative.

We have no hesitation in holding that the conservator occupies a fiduciary or confidential relationship with reference to his ward's property. The relationship [1] exists under common law and by virtue of statutory enactments. We have held a fiduciary relationship has broad meaning and is subject to broad interpretation.[2] We have likewise stated confidential and fiduciary relationships are synonymous.[3] Such a relationship is based upon confidence and trust and exists when one acts in the management and investment of property not his own, for the use and benefit of another.[4]

The confidence alluded to by this Court has been described as a peculiar one when in *Wells v. Shriver*, 197 P. 460, 484, 81 Okl. 108 (1921) we approved 2 Bouvier's Law Dictionary's definition, page 1217:

"What constitutes a fiduciary relation is often a subject of controversy. It has been held to apply to all persons who occupy a position of *peculiar confidence* towards others, such as a trustee, *executor or administrator*, director of a corporation or society. (Citations omitted). (Emphasis supplied).

Our research has produced as a part of the syllabus of this Court in *Daniel v. Tolon*, 157 P. 756, 53 Okl. 666, 4 A.L.R. 704 (1916), the following:

"GUARDIAN AND WARD—Dealings Between—Presumption of Fraud—Proof to Overcome.... Any conveyance, purchase, sale, contract *and especially, gift*, by which the guardian derives a benefit at the expense of the ... ward ... *while the influence lasts*,[5] is presumed to be

---

**1.** A fiduciary is defined among other definitions, in Black's Law Dictionary, 5th Edition, page 563, as:

"A person or institution who manages money or property for another and who must exercise a standard of care in such management activity imposed by law or contract; e. g. *executor of estate*; receiver in bankruptcy; trustee." (Emphasis supplied).

**2.** *Reeves v. Crum*, 225 P. 177, 97 Okl. 293 (1924). See also *Ewing v. Ewing*, 126 P. 811, 33 Okl. 414 (1912).

**3.** *Fipps v. Stidham*, 50 P.2d 680, 174 Okl. 473 (1935).

**4.** 58 O.S.1971 § 890.4. Management of estate —Bond.

"Every conservator appointed as provided in the preceding sections shall have *the care, custody and management* of the estate of his ward until he is legally discharged; and he must give bond to the State of Oklahoma, in like manner and with like conditions as provided for guardians of minors, omitting the conditions relative to the care, custody, and education of the ward." (Emphasis supplied).

**5.** We are not unmindful of a slightly different fact situation in *Daniel v. Tolon, supra*, wherein the deed was given subsequent (one week) to the termination of the guardian-ward relationship. We interpret the case as holding any such transaction *during* the wardship, to be absolutely void, but only voidable *after* the wardship. "(Courts of equity) will not permit transactions between guardians and wards to stand, even when they have occurred after the minority has ceased and the relationship become thereby actually ended, if the intermediate period be short, unless the circumstances demonstrate, in the highest sense of the term, the fullest deliberation on the part of the ward, and the most abundant good faith (uberimma fides) on the part of the guardian." *Daniel v. Tolon, supra*, 157 P. at 759.

invalid and voidable. The burden rests heavily upon the guardian to prove all the circumstances of knowledge, free consent, good faith, absence of influence, which alone can overcome the presumption." (Emphasis supplied).

We are asked to uphold the trial court when it found that the Act allowed a gift to a conservator but not a contract to conservator or other third party.[6] We feel disinclined to hold that the failure of the Legislature to prohibit a gift has the effect of approving a gift to the conservatee when the Act specifically prohibits his contract, 58 O.S.1971 § 890.10. Such syllogistic reasoning we will not follow.

The Act specifically provides at § 890.5:

"Powers and duties—Jurisdiction of court: A conservator *shall have the same powers* and *duties* except as to the custody of the person *as a guardian of a mentally ill or incompetent person* ; and all laws relative to the jurisdiction of the county court over the estate of a person under guardianship *as a mentally ill or incompetent person*, including the investment, management, sale or mortgage of his property and the payment of his debts, *shall be applicable* to the estate of a person under conservatorship." (Emphasis supplied).

At least one state has stated its conservatorship statutes constitute among other things an alternative to guardianship proceedings and a means of avoiding "the stigma of the label of incompetency."[7] Adopting the reasoning of the conservator would overlook and hold meaningless the specific provisions of this Act, more particularly §§ 890.2, 890.4, 890.5 and 890.10.[8]

REVERSED WITH DIRECTIONS TO QUIET TITLE IN THE DECEDENT'S ESTATE.

BARNES, V. C. J., and WILLIAMS, HODGES, HARGRAVE and OPALA, JJ., concur.

LAVENDER and SIMMS, JJ., dissent.

LAVENDER, Justice, dissenting:

The opinion of the majority deals a death blow to charity unwarranted by the facts before us, and contrary to law.

As a general rule, natural persons have the right to give away their property to whomsoever they wish; and if they do so and the gift is not induced by fraud or undue influence, only the creditors of the person who makes the gift may impeach it.[1]

In the absence of a statute to the contrary, a person of adequate mentality has the right to give away any part or all of his property if he wishes to do so.[2]

---

**6.** We find no authority in our Guardianship (58 O.S.1971, § 761 et seq.) or Conservatorship (58 O.S.1971 § 890.1 et seq.) statutes for permitting the guardian or conservator to benefit personally from transactions involving his ward's property. "A guardian will not be permitted to profit directly or indirectly from the sale of his ward's estate. And a *sale* conducted in which the guardian has a direct or indirect interest antagonistic in effect of the interest of his ward is conducive to fraud, against the interest of the ward and public policy, and should never be completed when the facts are discovered."— *Chrisman v. Parks*, 139 Okl. 152, 281 P. 559 (1929). Although there is authority to allow the guardian to *sell* the ward's property (58 O.S.1971 §§ 831, 890.10), we find no provision approving outright gifts.

**7.** *Board of Regents of State University of Wisconsin v. Davis*, 553 P.2d 1047, 1050, 120 Cal. Rptr. 407, 14 Cal.3d 33 (Cal.1975); *Place v. Trent*, 103 Cal.Rptr. 841, 845, 27 Cal.App.3rd 526, 532 (1972).

**8.** In *Place v. Trent*, supra, 103 Cal.Rptr. at page 844, the Court reasoned the effect of allowing a gift conveyance by the conservatee would render meaningless other sections of the California Code, exactly as we do today. We are not unmindful of the later action by the Supreme Court of California in the *Board of Regents* case, supra, when it disapproved of the California Court of Appeals prohibition of *all* contracts by a conservatee. That Supreme Court pointed out that the California conservatorship statutes dictated another result. We believe the Supreme Court of California would have reached the result we do, and as did the Court of Appeals, were the Code provisions of California the same as in Oklahoma.

**1.** *Brashears v. State*, 194 Okl. 663, 154 P.2d 101 (1944).

**2.** 38 Am.Jur.2d Gifts § 5; *Amado v. Aguirre*, 63 Ariz. 213, 161 P.2d 117, 160 A.L.R. 1126.

Neither sickness nor old age of themselves amount to incapacity to execute a deed or to make a gift.[3]

That the donor, Emery Dalrymple, was mentally competent to make the gift was not only established by convincing and undisputed evidence in the record, the very nature of conservancy proceedings instituted by him presupposes him legally competent.

Conservatorship over an individual's property and affairs is a creature of statute and is embraced in 58 O.S.1971, § 890.1, et seq. The only statutory basis for appointment of a conservator is that the ward "is unable to manage his property" by reason of advanced age or physical disability.[4] Mental incapacity or incompetency are not grounds for appointment of a conservator. This necessarily presupposes the prospective ward to be of sound mind. Otherwise, there would be no purpose to be served in enacting the statutes relating to conservatorship, since the statutes governing guardianship would then apply. In addition, there is a presumption favoring sanity.[5]

Following a brief confinement in two hospitals, Emery Dalrymple was admitted to the Veteran's Administration Hospital in Amarillo, Texas. On October 2, 1975, he signed a petition alleging he was 64 years old, and "in view of my present hospitalization and present physical condition and being a single person I am unable to manage my property properly," and petitioning the court to appoint his brother, Harold W. Dalrymple, one of the plaintiffs, conservator over all of his property. The petition was filed in district court on October 3, 1975, and on the same day, the district court granted the petition and appointed the brother as conservator. While Emery's affairs were still under conservatorship, he deeded the lands and mineral interest here involved to plaintiffs, his siblings. The consideration for the deed was $10 and "the love and affection which I have and bear toward the grantees herein." The deed was delivered to one of the grantees and four days after its execution it was duly recorded in the office of the county clerk of the county where the land was situated. Thereafter, Emery Dalrymple executed and filed both a federal and an Oklahoma gift tax return which included the gift by deed conveyance to plaintiffs.

In other words, all of the requisites for a valid gift inter vivos were present,[6] and the gift having been completed, it stands on the same footing as an executed contract.[7]

On March 6, 1976, Emery made a will in which he left all of his property to his daughter, one of the defendants, and in which he named another defendant executrix of his will. Emery died on December 6, 1976, and on February 28, 1978, the will was admitted to probate. Plaintiffs brought suit to quiet their title based upon the deed made by Emery to them.

Here we have the deliberate expression of the charitable disposition of a mature, mentally competent man in the giving by deed of conveyance of his land to his siblings, one of whom is his conservator, only to have his act of generosity, his *right* to give, posthumously frustrated by what seems to me to be a tortuous divination by the majority of a prohibition in § 890.10 of 58 O.S.1971 where none clearly exists.

Section 890.10 provides that upon the appointment of a conservator the ward shall not thereafter "have the power to enter into any *contract* creating an obligation against his estate except for necessities." [Emphasis supplied.] There is no mention

---

**3.** *Amado v. Aguirre, supra,* 161 P.2d at page 119; *McSpadden v. Mahoney,* Okl., 431 P.2d 432 (1967). In *Mahoney* (at page 436) we held "that advanced age and reduced mental processes will not invalidate a gift where the donor is competent to understand the nature and effect of the transaction."

**4.** 58 O.S.1971, § 890.1.

**5.** *McSpadden v. Mahoney, supra,* n. 3, at p. 436.

**6.** *Davis v. National Bank of Tulsa,* Okl., 353 P.2d 482 (1960); *Harmon et al. v. Kerns et al.,* 169 Okl. 290, 36 P.2d 898 (1934).

**7.** *Wilson v. Fackrell,* 54 Idaho 515, 35 P.2d 409, 412 (1934).

of prohibiting the making of a gift, and none should be implied. When the intent of the legislature is plainly expressed in a statute, it must be followed without further inquiry.[8]

Emery Dalrymple's gift was in the form of a deed of conveyance given in consideration of love and affection. Although a deed may be a contract,[9] an instrument of conveyance is a contract because and if it contains all of the attributes of a contract and not because it is a deed. A conveyance given without consideration other than love and affection is a deed, but it is also a gift.[10] The intention of the legislature in enacting § 890.10 is manifest within the clear meaning of the language therein employed. Emery Dalrymple was rendered powerless to make a contract for the conveyance of his property by reason of the fact that his affairs were under a conservatorship. That section did not render him powerless to convey it as a gift. Expressio unis es exclusio alterius.[11]

If one under a simple conservatorship is thus to be deprived of his right to give his property to those he wishes to have it, let the Legislature—not this court—provide such limitations.

Neither does § 496 of 58 O.S.1971 void the gift by deed to Harold Dalrymple who was both the conservator of Emery's estate and one of the recipients of the deed of conveyance. For the same reasons, I would hold that since the instrument of conveyance was a gift, Harold was not a "purchaser" of the property nor was he "interested in any sale" thereof.

I have no difficulty in joining with the majority in holding that the relationship between a conservator and his ward is a fiduciary relationship based upon confidence and trust and that any gift from a ward to his conservator is presumed to be invalid and voidable, and that the burden rests heavily upon the conservator to prove all the circumstances of knowledge, free consent, good faith, absence of influence, which alone can overcome the presumption. But where I again part company with the majority is that in the case before us, in my opinion the evidence shows that Harold Dalrymple, the conservator, met that burden.

As for Emery Dalrymple, who presumably met his demise confident that he had disposed of his lands by gift to his siblings and the rest of his property to his daughter by his will, I can only say in the words of A. E. Housman:

Lie you easy, dream you light
And sleep you fast for aye;
And luckier may you find the night
Than ever you found the day.

I would affirm the judgment of the lower court.

**8.** *Estate of Kasishke v. Oklahoma Tax Commission*, Okl., 541 P.2d 848 (1975); *Johnson v. Ward*, Okl., 541 P.2d 182 (1975). See also *In re Assessment of Champlin Refining Co.*, 186 Okl. 625, 99 P.2d 880 (1940), and further stating (Syllabus 2 by the Court):

"The office of interpretation of a statute is not to put sense into the language used therein, but to ascertain the sense already existing there, and to go elsewhere to obtain something to enlarge or to limit its meaning is to endeavor to elude it."

**9.** *Couch v. Addy*, 35 Okl. 355, 129 P. 709 (1913); *Key v. Key*, Okl., 388 P.2d 505 (1963); *United States v. 85.11 Acres of Land, More or Less, in Pawnee County, Oklahoma*, 243 F.Supp. 423 (N.D.Okla.1965).

**10.** 38 Am.Jur.2d Gifts § 31.

**11.** *In re Arbuckle Master Conservancy District, District Court, Murray County, No. 9660 v. Petitti*, Okl., 474 P.2d 385 (1970); *Meyers v. Oklahoma Tax Commission*, Okl., 303 P.2d 443 (1956).