[Civ. No. 353. Third Appellate District.—July 30, 1907.]

GEORGE H. FISHER, Administrator of Estate of GEORGE LUDWIG, Deceased, Appellant, v. CAROLINE LUDWIG, Respondent.

GIFTS—DEPOSIT IN SAVINGS BANK—DELIVERY OF PASS-BOOK WITH WRITTEN ORDER FOR PAYMENT—VERBAL DECLARATION.—Where a decedent before his death delivered to his sister in law a pass-book, representing a deposit in a savings bank, with written authority to the bank to pay the money to her, accompanied by verbal declarations proved that he wished her to have as her own all the funds belonging to him before he died, and the pass-book and order were deposited with the bank and accepted by it, before he died, every element of a gift appears, whether it be construed as a verbal gift, with means of possession, under section 1147 of the Civil Code, or as one effectuated by a written instrument passing title, under section 1146 of that code, construed with sections 1053, 1054, and 1083 thereof, and explained by oral testimony.

ID.—DELIVERY OF MONEY NOT REQUIRED—TITLE NOT AFFECTED BY ACTION OF BANK.—It is sufficient that the title to the money, and the means of control thereof, were passed to the donee. The actual delivery of the money in bank, which was not in the immediate possession of the donor, was not essential; nor was it essential, after acceptance of the pass-book and order by the bank, that the deposit should be actually passed to the credit of the donee, on the books of the bank, before the death of the donor. The validity of the gift between the donor and donee could not be affected by any action of the bank.

ID.—ADMINISTRATOR OF DONOR BOUND BY GIFT.—The administrator of the deceased donor is in no better position to question the gift than the donor would be if alive.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. W. Bartlett, Judge presiding.

The facts are stated in the opinion of the court.

A. K. Robinson, for Appellant.

John M. Fulweiler, for Respondent.

BURNETT, J.—Plaintiff, as administrator, brought the action for the recovery of $5,170, claiming that it belongs to

said estate, and that the defendant unlawfully collected and embezzled said amount after the death of said George Ludwig. The defense is that the money was given to defendant by the said George Ludwig sometime previous to his death. The issue is squarely presented by the pleadings, as follows: The complaint alleges:

"That thereafter, to wit, January 29th, 1903, the said George Ludwig, without any consideration therefor and for the purpose that the said indebtedness due to him from the Sacramento Bank aforesaid and represented by said pass-book 22,603 aforesaid might be drawn and collected therefrom and held in trust by the said defendant for his use and benefit, gave to the said defendant a power of attorney of which the following is a copy: 'Sacramento, Jan. 29, 1903. I hereby authorize the Sacramento Bank to pay to Caroline Ludwig any money standing to my credit as a deposit in said bank, represented by pass-book No. 22,603.' "

Signed " 'George Ludwig.' "

Defendant denies this allegation and avers "that said George Ludwig, on the 29th day of January, 1903, executed and delivered to Caroline Ludwig, this defendant, for good and valuable consideration, an order, assignment, and transfer to defendant, absolutely and without any reservation, all the sums of money coming to said George Ludwig from, or standing to his credit in said Sacramento Bank as a deposit in said bank in his name and as represented by pass-book No. 22,603, in words and figures as follows, to wit." Then follows the order hereinbefore set out. It is also averred in the answer that "the control and possession of said pass-book No. 22,603 was also delivered to this defendant by said George Ludwig."

A distinction of importance is recognized in some of the decisions between a gift resting in parol and one made effective by virtue of a written instrument. In *Driscoll* v. *Driscoll,* 143 Cal. 535, [77 Pac. 471], Mr. Justice Harrison, who seems to have written most of the cases on this subject while he was a member of the supreme court, speaking for the court, says: "There is no statutory requirement in this state that a gift which is effected by an executed grant shall be accompanied by a delivery of the property given, and as between the *parties to the transaction,* there is no violation of law or infringement of public policy, if the donor, after he has executed the in-

6 Cal. App.—10

strument of gift, shall retain possession of the property. A gift is declared by section 1146 of the Civil Code to be 'a transfer of personal property,' which, if made in writing, is by section 1053 called a 'grant or conveyance or bill of sale'; and by section 1083 'vests in the transferee all the actual title to the thing transferred which the transferrer then has unless a different intention is expressed or is necessarily implied.' As under section 1053 of the Civil Code this provision applies to personal as well as real property, the interest intended to be transferred is under section 1054 of the Civil Code vested in the transferee upon the donor's delivery of the grant.''

The rule as to verbal gifts is provided in section 1147 of the Civil Code as follows: ''A verbal gift is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee.'' The delivery of the written instrument to the donee in the one case then vests in him the title, but in the other case the means of obtaining possession must be given, and if capable of delivery the thing given must be actually or symbolically delivered to the donee before he can claim title. A failure to observe this distinction at times has led to some confusion and apparent conflict in some of the decisions. In fact, due consideration to this difference seems to have been given for the first time by our supreme court in the Driscoll case, *supra*. Another consideration sometimes ignored is the difference between an action brought by an administrator of an estate as such and one brought by a creditor of the donor within the provision of section 3440, Civil Code. But in the case at bar, whether the transaction be regarded in the light of a verbal gift or one effectuated by a written instrument explained by parol testimony, the evidence is clear and convincing that decedent, prior to his death, had voluntarily transferred the money in question to the defendant. The evidence is without substantial conflict, and in its salient features is as follows: A. L. Smith, cashier of the Placer County Bank, testified: ''I had something to do with the drawing of that order of July 29, 1902.'' (This was similar to the said order of January 29, 1903, but related to pass-book 136.) ''I called at the office of the Sacramento Bank and was furnished with the original order that is dated July 29, 1902, by the cashier. I brought the order to Auburn with me, and a few days later it was

signed by George Ludwig; after it was signed by him it was filed with the Sacramento Bank; prior to the drawing of that order I had a conversation with George Ludwig regarding moneys that stood in the Sacramento Bank in his name; he stated to me that he desired all his funds to go to Mrs. Caroline Ludwig before he died, in order to save any probating of the estate, and the order was drawn in connection with that particular matter. I had something to do with the drawing of the order of January 29, 1903; it was filed with the Sacramento Bank by me for Mrs. Ludwig; pass-book 136 was the term deposit, and 22,603 was the ordinary deposit; on the morning of March 12 I received from Mrs. Caroline Ludwig an order requesting the Sacramento Bank to transfer the amounts due to George Ludwig to a joint account in the name of Caroline Ludwig and George Ludwig. I wrote a letter to the Sacramento Bank requesting them to do that, and I sent the pass-books which I had held in my possession for months for Mrs. Ludwig.'' He testified further that the Sacramento Bank replied suggesting some embarrassment that might arise in case of a joint account, and advising that it be opened with one who could give the other authority to draw. This letter was written March 14th. March 17th Mr. Ludwig died, and on the same day Mr. Smith, by direction of Mrs. Ludwig, wrote the Sacramento Bank to transfer the account to Mrs. Ludwig, which the said bank did on March 18th.

Mrs. Caroline Ludwig testified as follows: ''I knew George Ludwig for 39 years. He was my brother in law and lived on our ranch nine miles from Auburn; prior to July 29, 1902, I had a talk with him about the disposition of his money; he wanted to give me the money, and he did give it to me; he gave me the bank-book and an order for the money; when he gave it to me he told me to keep it; he told me he give me all the money he has got, and I shall keep it for myself; he said about the money represented by those books—he told me to keep them and if I wanted some money to go and get it, and any time he wanted money he come to me and get some; he gave me another order afterwards; when he gave that order he said to me, he gave me the order; he give me the books and he told me to keep the money. I brought the books to the bank and I gave them to A. L. Smith, and he kept them in the bank. I have drawn money out of the bank on Mr. George Ludwig's account; whenever he told me he wanted money I

drew it; if I had money in my pocket I went out and gave it to him without drawing it; I gave him all the money he wanted and everything he wanted; he simply gave me that money in the bank and wanted me to keep it *because we worked together and earned it together* and he said it isn't more than right, because he didn't want to go through court."

J. M. Henderson, cashier of the Sacramento Bank, among other things, said: "The order of July 29, 1902, stands filed among the records of the bank as received on July 30, 1902; it authorized the bank to pay to Caroline Ludwig any money standing to the credit of George Ludwig represented by pass-book 136 and the order of January 29, 1903, authorized the bank to pay to Caroline Ludwig, represented by pass-book No. 22,603; and it was upon the strength of these orders that we recognized the subsequent orders of Caroline Ludwig dated March 12, 1904."

It is not contested that the whole amount in question is shown as a credit in said pass-book 22,603. Of course, it may be that Mrs. Ludwig did not tell the truth, but as there is nothing inherently improbable in her statements, and as the trial judge accepted them as true and based the findings upon her testimony and that of the other witnesses, we are not at liberty to discredit her testimony, but we must construe all the evidence so as to uphold rather than overthrow the judgment of the lower court. The record thus discloses every element of a gift. The deceased expressed clearly and unequivocally his intention that the defendant should have as her own the money immediately, and since the property was not in his possession, he did all that the statute and decisions require, he gave her the means whereby she could reduce the property to her possession, to wit, the order upon the bank where the money was deposited. The elements necessary to the validity of a gift *inter vivos* have been specifically stated as follows: 1. The donor must be competent to contract. 2. There must be freedom of will. 3. The gift must be complete, with nothing left undone. 4. The property must be delivered by the donor and accepted by the donee. 5. The gift must go into immediate and absolute effect. (*Mercantile Safe Deposit Co.* v. *Huntington*, 89 Hun, 465, [35 N. Y. Supp. 390]; *Matthews* v. *Hoagland*, 48 N. J. Eq. 455, [21 Atl. 1054]; *Telford* v. *Patten*, 144 Ill. 611, [33 N. E. 1112].)

Reduced to simpler form, it is held that a gift must be *voluntary, gratuitous* and *absolute.* (*Williamson* v. *Johnson,* 62 Vt. 378, [22 Am. St. Rep. 117, 20 Atl. 279].) The foregoing elements must all be present to constitute a gift in this state, except that delivery is modified, as we have seen, by the provisions of the Civil Code. And the only controversy here is as to whether there was such a delivery as is required by the statute. The said order of January 29, 1903, was delivered to and accepted by the bank, and if that be regarded in connection with the transfer of the pass-book as a written instrument of gift, then the delivery of the money under the decision in the Driscoll case, *supra,* was not required. That the said order was intended as an assignment of the money is shown clearly by the parol testimony, and there is no good reason why it should not be given the effect that was intended by the parties. But in any event, the order constituted the means whereby defendant could secure possession of the money, thereby satisfying the requirement of said section 1147, Civil Code, since the property was in the hands of the bank and could not be actually delivered by the donor. The only circumstance in this connection urged by appellant entitled to any consideration is that the bank did not actually transfer the money to the account of defendant until the day after the death of the donor. It is difficult to see how the validity of the gift as between the donor and donee could be affected by any action of the bank. And it must be remembered that the plaintiff is in no better position to question the gift than would the donor be if alive. To protect itself the bank might refuse to recognize the transfer, but the bank is not a party to the action, and, besides, the testimony of Mr. Henderson shows that the bank accepted and acted upon the order before Mr. Ludwig's death. The fact that the clerical work of transferring the account had not been done is of no consequence, as the gift was complete prior to Mr. Ludwig's death. As stated in *Hart* v. *Ketchum,* 121 Cal. 428, [53 Pac. 931] : "Money deposited in a savings bank may be the subject of a gift *causa mortis* if it appears from the transaction that the donor intended to confer upon the donee a present right to the money and at the same time clothed him with the means of obtaining it." And this applies equally to gifts *inter vivos,* as the only difference between the two relates to the power of revocation.

(*Pullen* v. *Placer Co. Bank,* 138 Cal. 170, [94 Am. St. Rep. 19, 71 Pac. 83].)

It is claimed that the view of the lower court is opposed to certain decisions of the supreme court, but it is apparent that the facts in those cases are dissimilar to those before us, as will be disclosed by a brief reference to them. In *Zeller* v. *Jordan,* 105 Cal. 143, [38 Pac. 640], it was held that "the giving of a check by the wife to the husband in consideration of love and affection, with the understanding that the check *is not to be used or presented until after her death unaccompanied by the delivery of the pass-book or of any order accompanying the pass-book* as required by the rules of the bank is invalid." Here the gift was to take effect immediately, and it was accompanied by the delivery of the pass-books and an order upon the bank for the payment of the money.

In *Hart* v. *Ketchum,* 121 Cal. 428, [53 Pac. 931], the alleged gift was not absolute, but it was an unsuccessful attempt to make a testamentary disposition of property, as is apparent from what the intestate said: "I want you to draw this money and pay it out as I wish to have it done to different parties." There was nothing in his declarations to show an intent to make a present gift of the money. The case is not at all like the one at bar.

In *Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267], as stated in the syllabus, it is held that "oral declarations by an invalid woman preceding a written assignment of her personal property in contemplation of death, stating 'I want to give it to you or place all of it in your hands and tell you those I want should have it,' and other such declarations accompanying the transfer of bank-books to the effect that she wanted to assign the money under certain conditions that she had given in regard to its disposal, are insufficient to sustain the claim of a gift." It is manifest that it was not the intention of the intestate in that case to vest the title in the defendant, but to constitute him her agent rather than beneficiary to carry out a testamentary disposition of her property. This was made clear by written instructions as to what should be done with the property in the event of her death.

In *Vance* v. *Smith,* 124 Cal. 219, [56 Pac. 1031], the gift was not to take effect until some time in the future, and hence it was declared invalid.

In *Dcnigan* v. *Hibernia etc. Society,* 127 Cal. 138, [59 Pac. 389], it was properly held that "the retention by the wife of the right in herself to withdraw the whole of the money from the bank" is inconsistent with the idea of a gift. This must be so, because it is not a gift unless the donor devests himself of all control and dominion over the property.

In *Pullen* v. *Placer County Bank,* 138 Cal. 169, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83], John W. Clarke, Sr., for the purpose of making a gift of $1,000 to his son, John W. Clarke, Jr., drew his check upon the bank for that sum and delivered it to his son, saying that he could get the money from the bank, but after delivering it to him stated that he wished he would not present it until after his death. The son did not present it till the morning after his father's death. It was held that the gift was not complete, since the son did not present the check and secure possession of the money during the father's lifetime. However, the court said: "The check was not a symbolic delivery of the money, but it was a *delivery of the means by which the son could obtain possession of the money.*" This would seem to meet the requirement of section 1147, Civil Code, where the property is in possession of a third party, but at any rate, the case is not controlling here because the order in the case at bar was presented to the bank and accepted by it before the death of Mr. Ludwig.

In *Noble* v. *Garden,* 146 Cal. 225, [79 Pac. 883], it was held that the transaction did not amount to a gift where the deceased in her lifetime maintained dominion and control over the certificates of stock in controversy, and where she gave her agent oral directions to deliver the assigned shares to certain persons after her death, and the agent complied with the directions. Since the pretended gift was not to take effect until after the death of the transferrer it is clear that it could not be held to be a gift.

The decision in *Basket* v. *Hassell,* 107 U. S. 602, [2 Sup. Ct. Rep. 415], was based upon an alleged gift of money represented by a certificate of deposit evidenced by the following writing on the back of the certificate: "Pay to Martin Basket of Henderson, Ky.; no one else; *then not till my death. . . .* I may live through this spell. Then I will attend to it myself." It will thus be seen that the foregoing cases are not decisive here.

As an illustration of transactions upheld as valid gifts we may refer to *Vandor* v. *Roach,* 73 Cal. 614, [15 Pac. 354]; *Field* v. *Shorb,* 99 Cal. 661, [34 Pac. 504]; *Ruiz* v. *Dow,* 113 Cal. 490, [45 Pac. 867]; *Calkins* v. *Equitable B. & L. Association,* 126 Cal. 531, [59 Pac. 30].

The only other point worthy of notice relates to alleged erroneous rulings of the court upon objections to certain evidence. We do not deem it necessary to refer to them specifically. We have examined them all and we find no prejudicial error.

The cause appears to have been justly decided, and the order denying the motion for a new trial is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1907.