[Civ. No. 11389. Fourth Dist., Div. One. June 11, 1973.]

Estate of WILLARD S. WOOD, Deceased.
SOUTHERN CALIFORNIA FIRST NATIONAL BANK,
Petitioner and Respondent, v.
MORTON T. SWARTH et al., Claimants and Appellants;
GENEVIEVE L. KNIGHT, Claimant and Respondent.

864

**COUNSEL**

Gray, Cary, Ames & Frye, John M. Cranston, Timothy V. McFarland, Browning E. Marean, Luce, Forward, Hamilton & Scripps, Michael Ibs Gonzalez, Colin Peters, Scales, Patton, Ellsworth & Corbett, and Peter K. Ellsworth for Claimants and Appellants.

Haskins, Lewis, Nugent & Newnham, Gerald J. Lewis and Stephen L. Newnham for Claimant and Respondent.

No appearance for Petitioner and Respondent.

**OPINION**

**WHELAN, J.**—There are four separate appeals from a judgment directing Southern California First National Bank, as trustee of trusts created by the

decree of distribution in the estate of Willard S. Wood, to distribute the assets of one of the trusts in accordance with an appointment made by Florence Wood, widow of Willard S. Wood and donee of a power to appoint those assets.

The controversy arises out of the question whether the power of appointment given Florence Wood by her husband's will was exercised, and, if so, in whose favor it was exercised.

The will of Willard S. Wood, executed August 18, 1964, and admitted to probate after his death on May 27, 1967, disposed of all the community property of the spouses. Mrs. Wood had elected to take under the will and waived all claims to any share of the community property.

The will directed that the residue of his estate be divided into two trusts, Trust "A" and Trust "B." Mrs. Wood was named life beneficiary under both trusts and was given a general *inter vivos* power of appointment over Trust "A" as follows: "Anything herein to the contrary notwithstanding, if my wife survives me, then she shall have the absolute power exercisable *only by a written instrument other than a will delivered to the Trustee during her lifetime* to appoint any part of the principal and any undistributed income of Trust 'A' in favor of herself, her estate or any person." [Italics added.][1]

The will contained the following additional provisions: "If there should be a failure of disposition of all or any portion of Trust 'A' either in connection with the exercise or as a result of the non-exercise of the power of appointment, then upon my wife's death all of Trust 'A' not so disposed of shall be added to Trust 'B,' to be held, administered and distributed as a part of Trust 'B.' "

Upon the death of Mrs. Wood Trust "B" was to be distributed as follows: ½ thereof in equal shares to Thomas Peake and Mrs. Arthur (Judy) Mathews; ¼ to Willard F. Grinnell, Stuart W. Grinnell, Mary Elizabeth Grinnell and Richard Grinnell, children of Mrs. Joseph Grinnell; and ¼ to George Selwyn Swarth and Morton Themmen Swarth.

The decree of distribution, made and entered March 10, 1969, quoted the language of the will verbatim and ordered distribution of all the estate to the named trustee, except for a specific devise of books valued at $100.

There was filed with the trustee on December 12, 1967, an instrument dated November 6, 1967, signed by Mrs. Wood, which contained the

---

[1]All references to "the trust" hereafter will be to Trust "A."

following language: "With the intention of exercising said power of appointment given me by the Will of my late husband, WILLARD S. WOOD, I devise and bequeath all of the property over which I have the right of appointment under the Will of my said husband to the following persons in the following proportions upon my death:

"(a) One-third to the children of THOMAS PEAKE, 20 Vista Del Mar, Orinda, California 94563.

"(b) One-third to the children of Mrs. Judy Mathews, 15 Cordova Court, Portola Valley, California.

"(c) One-third to Morton T. Swarth, 6850 Snake Road, Oakland, California."

There was also filed with the trustee during the lifetime of Mrs. Wood an instrument signed by her, dated April 30, 1969, by which she declared she did thereby: " . . . exercise said right and power of appointment as follows:

"1. I hereby direct that upon my decease one-half of the trust estate of Trust A go and be distributed to MORTON T. SWARTH, my husband's nephew, or if he should fail to survive me such share shall go and be distributed by right of representation to his issue living on the date of my death.

"2. I hereby direct that upon my decease one-half of the trust estate of Trust A go and be distributed to MARY ELIZABETH GRINNEL [*sic*] (MOLLY), or if she should fail to survive me such share shall go and be distributed by right of representation to her issue living on the date of my death, or if she leaves no issue surviving me, in equal shares to WILLARD F. GRINNELL, STUART GRINNELL, and RICHARD GRINNELL, or if any of them should fail to survive me his issue shall take the share of such decedent by right of representation.

"3. This instrument shall be binding upon my heirs, executors, administrators and assigns."

Mrs. Wood signed the following instruments also: an instrument, witnessed on October 28, 1970, and received by the trustee on December 28, 1970, which stated: "I hereby revoke any power of appointment that I may have exercised under my husband's Will dated August 18, 1964, probate number 85739 and exercise all powers of appointment that I may have in favor of GENEVIEVE KNIGHT.";

and an instrument dated November 3, 1970, in which she declared she

did thereby: " . . . exercise said right and power of appointment as follows:

"1. I hereby direct that upon my decease the trust estate of Trust A go and be distributed to GENEVIEVE KNIGHT, my companion.

"2. This instrument shall be binding upon my heirs, executors, administrators and assigns."

The separate appeals of persons having three mutually conflicting claims have been consolidated. The appeals are from a judgment declaring that Genevieve L. Knight should receive the remainder of the trust.

The claimants who have appealed are: (1) Morton T. Swarth; (2) Alan Peake Mathews, Arthur Joseph Mathews, Michael Cahlan Mathews, Cheryl Elizabeth Peake and Meredith Louise Peake, Mrs. Arthur (Judy) Mathews and Thomas Peake; (3) Mary Grinnell.

Alan Peake Mathews, Arthur Joseph Mathews, Michael Cahlan Mathews (children of Judy Mathews) and Cheryl Elizabeth Peake and Meredith Louise Peake (children of Thomas Peake), who with Morton T. Swarth were appointees under the 1967 instrument, state this position: The 1967 instrument was an irrevocable exercise of the power of appointment because the donee did not reserve to herself in that instrument the power to revoke; and the later attempts to exercise the power were ineffective because Mrs. Wood, being under conservatorship, lacked the legal capacity to exercise the power.

Morton T. Swarth, one of the appointees named in the 1967 instrument, makes the same contentions as the Mathews and Peake claimants; and contends that the 1970 appointing instrument was also ineffective because the instrument was not delivered to the trustee during Mrs. Wood's lifetime and when delivered the delivery was not by Mrs. Wood but by the man who had been acting as her attorney at the time of her death and whose authority ended with her death.

Mary Grinnell, one of the appointees named in the 1969 instrument, takes this position: All three of the three appointing instruments were revocable, the conservatorship did not impair the ability of Mrs. Wood to make an appointment effective only at her death; but the appointing instrument of 1970 was ineffective because not delivered to the trustee until after Mrs. Wood's death.

Mrs. Arthur (Judy) Mathews and Thomas Peake, remainder beneficiaries of ½ of the assets of Trust B under the will of Willard S. Wood, and so takers of ½ of the assets of Trust A in default of the exercise of the power

of appointment, state this position: Mrs. Wood had capacity to and did revoke the two prior exercises of the power by her instrument of October 28, 1970, although that instrument was not received by the trustees until after Mrs. Wood's death; however, the instrument of November 6, 1970 was ineffective as an exercise of the power because it was not delivered to the trustee until after the death of Mrs. Wood; consequently the power remained unexercised at the death of Mrs. Wood.

I

A determination whether the 1967 instrument effected a present and irrevocable transfer calls for a consideration of the state of the then existing law with regard to the revocability of an appointment made under a power.

The writers of the Restatement of the Law of Property declared the following: "An appointment may be revoked by the donee if, and only if,

"(a) the power is general, or, the power being special, the donor does not manifest an intent that appointments shall be irrevocable; and

"(b) the donee manifests an intent to reserve to himself the power of revocation." (§ 366, p. 2026.)

In 1969 the California Legislature adopted Civil Code section 1392.1, subdivision (b), effective July 1, 1970, which declares: "Unless made expressly irrevocable by the creating instrument or the instrument of exercise, an exercise of a power of appointment is revocable if the power to revoke exists pursuant to Section 2280 or so long as the interest to the appointive property, whether present or future, has not been transferred or become distributable pursuant to such appointment."

That legislation can have application only as to the one appointment made after the effective date of section 1392.1.

The Restatement rule is traceable to the decision of *Heli* v. *Bond,* decided by the House of Lords in 1717, which was not fully reported. A digest of the decision appears in 21 Eng. Rep. 1089.

The power considered in *Heli* v. *Bond* was to appoint real property by a deed under seal.

The decision carried out the rule quoted from Littleton in *Clavering* v. *Clavering,* 2 Vern. 473 [23 Eng. Rep. 904]: "It is a common rule in the law, that the first deed and the last will are to take place."

The respectable authority of the Restatement of the Law of Personal

Property is not conclusive that the intent to reserve to the donee the power of revocation must be manifested by express language of the instrument by which the donee has exercised the power.[2]

The law as it had developed up to the execution by Mrs. Wood of the 1967 instrument was not without examples that such an intent could be implied.

*Chadwick* v. *Doleman,* 2 Vern. 528 [23 Eng. Rep. 941], dealt with the effect of an appointment made without reserving the power to revoke of a settlement of 2,600 pounds upon the second son of the appointor. Thereafter, the eldest son who was heir to the title and estate of the father having died, the father appointed the same 2,600 pounds to his other younger children. The court held the first appointment was revoked upon the death of the oldest son by which the second son became heir to the title and estates. The court said, at page 943: "[T]he said first appointment of the 15th March 1686, was not in its nature an absolute appointment, and therein differed from the cases now cited, where absolute voluntary deeds of appointment were made neither defeasible by express words nor by implication, but that in this case the said appointment was in its nature, and by implication, defeasible, . . ."

The court in *Re Beesty's Will Trusts* (1964), 3 All. E. R. 82, stated, at pages 86-87: "There is the familiar rule which is stated in a number of cases that a power, once executed, whether it is a joint power, or any other power, cannot be revoked unless a power of revocation is reserved by the instrument. That is the view stated in FARWELL ON POWERS (3rd Edn.), p. 306, and there are similar statements in SUGDEN ON POWERS; and 30 Halsbury's Laws (3rd Edn.), 267, at para. 507, endorses those statements; but is there any basis for applying it in such a case as this? It is clear from the statement in FARWELL, and from the reference to the authorities which I find under it, that it is derived from and based on the principle that a deed is by its nature an irrevocable instrument, and the consequence is that an appointment by deed is irrevocable unless in the deed there is contained power to revoke it. It is not a necessary step,

---

[2]Professor Richard R. B. Powell, one of the authors of the Restatement of the Law of Property, wrote, in "Powers of Appointment" of the Restatement of California: "Herein, for the first time in American jurisprudence, could be found the harmonizing of discordant voices in the nonstatutory law of powers, with a considered choice as between conflicting rules. It never was intended to be accepted in toto, and without inquiry, as the law of California or of any other state. It merely provides the embodiment of 1940 wisdom of a group of specialists, which the courts of any state are free to follow or to modify. It does, however, indicate the diversities of the commonly litigated problems raised when powers of appointment are commonly employed." (19 Hastings L.J. 1281, 1286.)

in my judgment, to extend that argument to powers which can be exercised, and are exercised, otherwise than by deed. There seems to me to be then no reason in principle why, if a power can be informally exercised, it should not be capable of being changed in a similar manner, or why it should be a necessary condition of any such change to require that the first exercise should reserve a power to change or revoke it. Whether or not the principle is capable of applying to instruments other than deeds, I think that I can safely say that I see no reason to apply it to such a case as this, where what is given is a power of selection between various charities which power can only be effective if it is constantly reviewed and as to which the testatrix must have contemplated the necessity or desirability of amendment, or indeed complete revocation, from time to time. I therefore hold that even in the absence of any express power of revocation or amendment in the document of 1938 there is nothing to prevent a subsequent instrument of a similar character being employed to revoke or amend the exercise contained in that document."

Sugden on Powers and Farwell on Powers, and their rule as included in the Restatement of Property, received honorable mention by the Supreme Court of Massachusetts in *State Street Trust Co.* v. *Crocker,* 306 Mass. 257 [28 N.E.2d 5, 8, 128 A.L.R. 1166], which then traced the rule to *Heli* v. *Bond, supra,* 21 Eng. Rep. 1089, and proceeded to say: "Lord St. Leonards himself in the eighth edition of Sugden on Powers, at page 370 . . . approves the decision in Hele [*sic*] v. Bond, however, apparently on the practical ground that it tends to promote certainty in conveyancing. It may be doubted today whether the doctrine of that case as applied within the framework of a modern trust is not more likely to prove a pitfall than a convenience. But if it is the law, it plainly defeats the intention of the settlor or testator and is therefore so far opposed to the present trend that it ought not to be extended by analogy or otherwise to new situations not within its established scope. We think the rule does not apply to this case."

Other American decisions have not observed the rule as found in the Restatement.

In *U.S. Trust Co.* v. *Commissioner,* 296 U.S. 481, 486 [80 L.Ed. 340, 344, 56 S.Ct. 329, 331], referred to in the Massachusetts case, Hughes, C. J., noted: "No question is raised as to the validity of the several amendments."

In *Henderson* v. *Rogan* (9th Cir. 1947) 159 F.2d 855, the creator of a trust gave to his wife a power of appointment over: " . . . the principal and income of the trust estate after her decease, to be exercised not by will

but only by the last unrevoked written instrument which exercised such power and on file with the trustee at the time of her death."

The next day the wife exercised the power in favor of her husband, without reserving a right of revocation. After his death she filed an instrument stating she revoked the first appointment and appointed the remainder interest to her estate to be distributed under the terms of her last will. It was held the first exercise of the power was revoked by the second instrument.

Although in *Morton* v. *Commissioner of Internal Revenue* (7th Cir.) 109 F.2d 47, the limited power to appoint income of a trust was reserved by the creator of the trust, there should be no difference in principle whether the holder of the power be the settlor of the trust or a donee of that settlor.

In the cited case the court stated, at pages 51-52: "On this phase of the case, liability turns upon the effect of Joy Morton's single exercise of his right to modify the terms of the trust. The Board held, on the authority of Day v. Commissioner, 3 Cir., 92 F.2d 179 that his right to amend was exhausted by a single exercise of the power. Day v. Commissioner, supra, was supported by and based on Hidell v. Girard Life Insurance Company, Fed. Cas. No. 6464, C.C. Penn., 1879.

"We are not inclined to accept the rule and do not hold that a single exercise of a general right to modify a trust exhausts the reserved right where there are no restrictions, limitations or other qualifications to be found in the trust agreement which restricts the grantor's exercise of the right to modify to a single instance."

*Bowen* v. *Chase,* 94 U.S. 812 [24 L.Ed. 184], is cited in the textbooks as affirming the rule that found expression in the Restatement. It actually lends support to a doctrine that a power of revocation may rest upon the presumed intention of the donor. It dealt with a power of appointment over real property which included a power of sale. The donee in 1828 appointed all the property to her husband for life, subject to an annual money charge in favor of a niece. In 1850 and 1853, the donee directed the sale for cash of certain parcels, which were conveyed accordingly. In holding the sales superseded the earlier gratuitous appointment, the court said, at pages 186-187: "The execution, for example, of a power of sale will supersede all other powers, for it must necessarily do so in order to have any effect.

"      .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"In the present case there  .  .  . are really two distinct powers contained

in one clause; and, according to the rules laid down by Mr. Sugden, the power to sell is the superior power, and will override the other power and supersede it, if previously exercised.

"This rule with regard to the relative priority and dignity of different powers in the same instrument, though depending on construction and the presumed intention of the donor, is somewhat analogous to the rule adopted by the courts in construing the Act of 27 Elizabeth, respecting fraudulent conveyances." (Pp. 186-187.)

The court in *State Street Trust Co.* v. *Crocker, supra,* 306 Mass. 257 [28 N.E.2d 5, 8], states that the rule of Sugden: " . . . appears to have been approved in most of the few American decisions in point. Slifer v. Beates, 9 Serg. & R., Pa., 166, 182, Ex Parte Elliott, 5 Whart., Pa., 524, 528, 34 Am. Dec. 572; Hidell v. Girard Life Insurance, Annuity & Trust Co., 12 Fed. Cas. page 122, No. 6,–464; Day v. Commissioner of Internal Revenue, 3 Cir., 92 F.2d 179."

An examination of those decisions discloses that they lend little support to the rule which they were said to follow, and that their statements about the rule are dicta.

*Slifer* v. *Beates,* 9 Serg. & Rawl. 166, 182, held that a power to transfer by deed was not exercisable by will. For the purpose of distinguishing between a deed and a will, the court made this statement: "[W]here the power is executed by deed, unless a power of revocation be reserved in the deed, the appointment cannot be revoked."

*Hidell* v. *Girard Life Insurance, Annuity & Trust Co.,* 12 Fed.Cas. 122, 123, dealt with a power of revocation contained in the following language, by which a trustor reserved to herself power: " 'at any time after the first day of July, 1875, by any instrument in writing executed in the presence of two witnesses, to modify, change and alter said trusts, and to declare new and other trusts upon which said estate shall then be held, or, at her pleasure, entirely to revoke the same.' "

The court held the power was exercised and exhausted by an instrument dated October 27, 1876, which read: " 'I hereby renew the trust created by the deed of June 24, 1872, recorded in Deed Book J. A. H. No. 269, page 441, for five years from this date. Witness my hand and seal this 27th day of October, 1876. Dora Robinson. Witnesses: Annie Smythe, L. C. Freeman.' " (P. 123.) Consequently an attempt within that five-year period to revoke the trust in its entirety was nugatory.

*Ex Parte Elliott,* 5 Wharton 524, held that the power given an executor to sell land to secure an income to the testator's widow was exhausted by a sale under which a ground-rent was to be paid to the executor so that an administrator who succeeded the executor had no power to sell the ground-rent so obtained.

*Day* v. *Commissioner of Internal Revenue* (3d Cir.) 92 F.2d 179, has been cited in support of the Restatement rule. The decision refers for its facts to the report under the same title in 34 B.T.A. 11 (March through October). The question involved was as to the taxability of the assets of five *inter vivos* trusts in which the settlor reserved a power to revoke or amend effective during his lifetime with the concurrence of the respective life beneficiaries. There was an amendment as to each of two of the trusts only, and no attempt to revoke those amendments or amend either trust thereafter. One of the unamended trusts named as beneficiary a daughter who was a minor at the trustor's death. As to that trust it was held that the power to revoke could have been exercised only after the daughter attained majority; as to the two trusts that had been amended it was held the power to revoke had been exhausted. The opinion cites *Hidell* v. *Girard Life Insurance, Annuity & Trust Co., supra,* 12 Fed.Cas. 122.

The rule as found in the Restatement receives respectful mention in other cases whose decisions were not based upon the rule: See *Rice* v. *Park,* 223 Ala. 317 [135 So. 472, 476], and *Wilmington Trust Co.* v. *Wilmington Trust Co.,* 21 Del.Ch. 102 [180 A. 597]. In the Delaware case there was an *inter vivos* exercise of a power of appointment, and no attempt by the donee during his lifetime to revoke the appointment. A claim was made that he exercised the power by a last will which made no mention of the power or the property subject to it.

It appears that in the known American decisions the rule found in the Restatement is more honored in the breach than in the observance.

However, *Central Trust Co.* v. *Watt,* 139 Ohio St. 50 [38 N.E.2d 185], is a case that holds squarely upon the authority of the Restatement. The donee had first executed an instrument that recited: "I hereby designate the beneficiaries of said trust to be in accordance with the express wish of my deceased husband, John C. Conner, as set forth in the foregoing letter, which he addressed to me on December 24, 1910." Thus the name of the appointee had to be found in the husband's letter, which said: "I now dictate this letter to you, not as binding you in any way, but as a

suggestion to you what my wishes are if you can conveniently carry them out, and you deem them best at the time you do attempt to carry them out.

". . . so far as I can designate, and I do designate as my wish that Dartmouth College should be the ultimate beneficiary of the trust fund." (P. 187.) The court held the designation, made 13 years later, of Berea College in place of Dartmouth ineffective.

The authors of *Powers of Appointment in California: Revocability of an Appointment* (8 Cal. Western L.Rev. 439), quote the Restatement rule and cite the English authorities upon which it was based, and attribute to the American authorities which do not follow the rule a distinction between, appointing instruments as being in the nature of a deed or in the nature of a will.

The rule that an executed deed once delivered is irrevocable receives the same respect in California as under the common law, although the grantor may have used such language as, "If I get well, you will give it back?" (*Duffy* v. *Duffy,* 71 Cal.App. 251 [235 P. 62].) In *Hodoian* v. *Garabedian,* 79 Cal.App. 762, 767 [251 P. 227], the language of the grantor was imperative and the grantee executed a document containing the following language: " 'I hereby admit that the delivery of the above described property, is on the condition that should my brother E. Garabedian recover from his present illness, and demand the return of his said property to him, I will so redeliver it to him; but in the event of his death, the transfer and delivery of said property is absolute.' "

In *Niccolls* v. *Niccolls,* 168 Cal. 444 [143 P. 712], there was a purported deed of trust "to take effect only upon the death" of the trustor, transferring property that the trustor might own at the time of his death. It was held not to convey any present interest.

The power to revoke a grant of real property must be explicitly reserved in the deed of grant, and the grant made expressly subject to the right reserved.

The presence in the deed of such an explicit power of revocation is not repugnant to the grant, and if the power be not exercised during the lifetime of the grantor the grant becomes indefeasible. (*Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570 [140 P. 242].)

It has not usually been described as such, but the facts in *Tennant* v. *John Tennant Memorial Home, supra,* bring it within the class dealt with by the English courts as involving the reservation of a power of appoint-

ment over real property. The grantor reserved to herself: " 'the right during her natural life to sell any of the above described property, and to sign and execute deeds therefor in her own individual name and to convey by any such deed a full, perfect and absolute title thereto to the purchaser thereof, . . .' " (P. 572.)

In theory appointed property comes to the appointee as a gift from the donor of the power. The donee is said by some of the authorities to be the agent of the donor in the selection of the beneficiary of the donor's bounty.

But the donee of a general power of appointment is said to possess all the attributes of complete ownership of the subject of the power. Toward such a donee the person in whose favor the appointment is exercised must look with more gratitude than to the donor.

■ The exercise of a general power presently effected must as a practical matter be considered by the parties as the making of a gift by the donee, and the rules governing completed gifts must be taken into consideration.

An irrevocable exercise of a power of appointment may be considered as a completed gift.

A gift other than a gift in view of death cannot be revoked by the giver. (Civ. Code, § 1148.)

A gift is a transfer of personal property, made voluntarily, and without consideration. (Civ. Code, § 1146.)

Civil Code sections 1053 and 1054 provide: "A transfer in writing is called a grant, or conveyance, or bill of sale. The term 'grant,' in this and the next two Articles, includes all these instruments, unless it is specially applied to real property." (§ 1053.)

"A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." (§ 1054.)

In *Fisher* v. *Ludwig,* 6 Cal.App. 144, 148 [91 P. 658], the court held: "The elements necessary to the validity of a gift *inter vivos* have been specifically stated as follows: 1. The donor must be competent to contract. 2. There must be freedom of will. 3. The gift must be complete, with nothing left undone. 4. The property must be delivered by the donor and accepted by the donee. 5. The gift must go into immediate and absolute effect."

When the transfer is not to be made until the death of the alleged donor,

a gift is not complete. Thus a gift of a check upon a bank account signed by the owner of a deposit which is to be used only at his death, or a gift of a note signed by an alleged donor which is to be used only at death, is not a completed gift. (*Pullen* v. *Placer County Bank,* 138 Cal. 169 [66 P. 740, 71 P. 83]; *Zeller* v. *Jordan,* 105 Cal. 143 [38 P. 640]; *Wisler* v. *Tomb,* 169 Cal. 382 [146 P. 876]; *Hironymous* v. *Hiatt,* 52 Cal.App. 727 [199 P. 850]; *Estate of McConnell,* 6 Cal.2d 493, 495 [58 P.2d 639].)

In arriving at our conclusion we follow the rule stated in *Callet* v. *Alioto,* 210 Cal. 65, 69 [290 P. 438]: "[I]n determining what the common law is, this court is not limited to a consideration of the English decisions, but can and should consider and weigh the reasoning of the courts of sister states. Stated in another way, the decisions of sister states constitute evidence of what the common law is, even if *contra* to the English decisions."

It remains that the Restatement rule is not of unqualified application, nor does it fully state the antecedent law if it is considered to mean that there must be in the appointing instrument express language reserving a power of revocation.

## II

We now consider whether a power of revocation is implied in the language of the 1967 and 1969 instruments.

The meaning to be given the language of the 1967 instrument as showing revocability or non-revocability involves a consideration of the right possessed by Mrs. Wood under her husband's will.

Mrs. Wood was given the power to appoint to herself the whole or any part of the corpus of the trust. Such an exercise of the power as a present act of transfer could terminate the trust and place its assets in her hands. That to her would have been a most valuable property right and must have been one of the considerations moving to her for her surrender of her community property interest.

The testator's primary interest in the trust provisions of the will must also have been to secure the future of his widow.

An irrevocable present transfer of a future interest in the trust would place forever out of the donee's power the right to appoint to herself any part of the principal, should she have need of it.

Although the trustee would still have power to invade principal for her benefit if necessary, that is quite another thing.

Apart from the power of appointment she had a life tenancy in the

income from the trust, upon the termination of which the remainder interest would have passed to Mr. Wood's legatees.

Had she been given a power of appointment over only that remainder interest, an instrument purporting to exercise the power would of its nature be one that would pass no more than a future interest, and might be argued more plausibly to be irrevocable.

But Mrs. Wood had more than that. She had the right to appoint to herself or to another all or any part of the principal as a presently effective transfer; she could have appointed a life interest in income to one person and the remainder to another person.

If she wished, however, to carve out a remainder interest and make a presently effective appointment of it, retaining to herself or for further disposition a life interest in the income, she could have used apt words to effect such an intention.

She did not do so. She spoke of exercising the power as to all property over which she had the power of appointment. It is clear she did not intend to make a present transfer as to all that property, which would have included present income. She was not in that respect making a present gift.

Taking all the matters touched upon into consideration, it is reasonable to infer that likewise she did not intend a present transfer of the remainder interest.

██ The language used, that she did "devise and bequeath . . . upon my death," is not the language of a present transfer or gift, and when considered with the nature of the exercisable rights with which she would have parted had she made an irrevocable appointment although of a future interest, gives rise to a permissible inference that a present irrevocable appointment was neither intended nor made by the instrument of 1967.

██ The 1969 instrument did not use the words "devise and bequeath." It directed that upon the death of Mrs. Wood the trust estate be distributed. The instrument bears the marks of experienced legal draftsmanship. An experienced legal draftsman who wished to provide for a present transfer of a future interest could do so by saying that the donee hereby appoints to herself the life income from the trust and to the designated appointee the remainder interest in the trust assets.

He might as an alternative have provided that, subject to the reservation of a life estate thereby reserved to Mrs. Wood, she thereby appointed to the named appointee the property subject to the power.

There is present here additionally a requirement of survival provision which may be considered as bearing upon the question of intention to make a present gift of any interest in the trust assets.

As with the 1967 instrument, it might reasonably be inferred that a completed present transfer was not intended.

We hold the 1969 instrument was intended to be and was subject to a power of revocation.

### III

Having concluded that the 1967 and 1969 instruments were revocable, the question remains whether Mrs. Wood was competent to exercise the power of appointment by the 1969 and 1970 instruments, both executed after a conservator had been appointed for her person and estate.

■ Civil Code section 1384.1, subdivision (a) declares: "A power of appointment can be exercised only by a donee having the capacity to transfer the interest in property to which the power relates."

The statute does not intend that a person competent to make a will is not competent to exercise by will a power which may be exercised by will.[3]

Mental incompetency in fact has a different effect.

A power in trust to direct or approve the purchase or the retention of trust assets by the trustee is terminated by the incompetency of the holder of the power. (*In re Buchanan's Trust* (Sup.) 142 N.Y.S.2d 502; *In re Erwin's Estate* (Sup.) 117 N.Y.S.2d 871.)

In *Swart* v. *Security-First Nat. Bk.,* 48 Cal.App.2d 824 [120 P.2d 697], the exercise by the creator of a trust of a reserved power to appoint the trust assets, although to operate only at her death, was held ineffective because the trustor was not in full possession of her mental faculties and the attempted exercise was the result of an insane delusion.[4]

■ It is not apparent that in restricting exercise of the power to an

---

[3]The following is found in Eisenstein, *Powers of Appointment and Estate Taxes: II,* 52 Yale L.J. 494, 501: "[A]n aged donee who has failed to exercise his power for many years when the opportunity readily presented itself, may become mentally incompetent to execute a will shortly before his death."

Unless the author refers to a power exercisable only by will, his opinion may be taken to be that the competency required to exercise a power is the same as required to execute a will.

[4]There were two successive and different designations of a beneficiary. The reported decision does not disclose whether a power of revocation was reserved in the first exercise of the power.

instrument other than a will, the donor's purpose was to require a degree of mental capacity in the donee greater than that required for the execution of a will. We conclude that was not the purpose of the restriction.

The question whether Mrs. Wood had capacity is bound up with the question whether there was a present and irrevocable transfer.

■ A conservatee is not competent to make a present gift of assets of her estate. (*Place* v. *Trent,* 27 Cal.App.3d 526 [103 Cal.Rptr. 841].) Undoubtedly the same rule must apply to a present gift of that which, although not a part of the conservatorship estate, produces one-half of the conservatee's income.

The logic of the position of the appointees under the 1967 instrument compels their claim Mrs. Wood was incompetent to exercise the power after the appointment of a conservator.

In their theory, such an instrument is an irrevocable transfer operating *eo instante,* although creating a future estate.

In the cited case of *Place* v. *Trent, supra,* 27 Cal.App.3d 526, the transfer was a present grant of real property in which the conservatee retained a life estate. Such a transfer of a substantial part of the conservatorship assets could not be allowed to stand because it would result in making it impossible to use such an asset to raise money if necessary for the care of the conservatee.

Any attempted gift of property of a conservatorship estate which would result in a possible failure of available assets for the care and maintenance of the conservatee must be beyond his or her power.

Although the property subject to the power is not itself an asset of the conservatorship, it is a source of income to the conservatorship for the maintenance of the conservatee. Any attempt by Mrs. Wood to make a presently effective appointment in favor of another of any part of the principal of the trust would have been an act beyond her competence.

There are obvious distinctions between such an attempted gift and an exercise of a power of appointment by an instrument having the ambulatory character of a will.

It does not follow necessarily that an instrument must likewise be beyond the conservatee's capacity that is subject to revocation and intended to be given effect only at the death of the conservatee.

■ While the will of Mr. Wood creating the power specifically declared the power might not be exercised by a will of the donee, an instrument

creating an estate to come into being at the donee's death, intended to be delivered during the donee's lifetime, subject to revocation during her lifetime, but to be effective unless so revoked, is not excluded by Mr. Wood's will as a means of exercising the power.

■ If it be granted that the instruments signed by Mrs. Wood after the appointment of the conservator have those characteristics, it is not unreasonable to apply the same tests that are applied in passing upon the competency of a person to make a will to the question, which has arisen because of the conservatorship, whether the instruments were validly executed.

■ The fact that there is legal guardianship does not establish the incompetency of the ward to make a will. (*Estate of Wynne,* 239 Cal. App.2d 369, 373 [48 Cal.Rptr. 656]; *Estate of Nelson,* 227 Cal.App.2d 42, 52-53 [38 Cal.Rptr. 459].)

■ The instrument of 1970 had the same ambulatory and revocable character as the two earlier ones. Since its effect was not to deprive Mrs. Wood or her conservatorship estate of any asset, its validity depended upon her competency to execute an instrument testamentary in nature.

The trial court found upon substantial evidence that she was competent. There is no substantial evidence to the contrary.[5]

### IV

■ The decree of distribution in the estate of Willard S. Wood specified that the power of appointment should be exercisable only by an instrument delivered to the trustee during the lifetime of the donee.

The instrument executed by Mrs. Wood on November 3, 1970, was given by her to Lawrence Rushall, the conservator, who as a notary public took her acknowledgment that she had executed the instrument. She instructed him to deliver it to her attorney for filing with the trustee.

---

[5]The superior court file of the conservatorship proceeding was in evidence before the trial court and we have had it brought before us.

It shows that a petition for appointment of a conservator was filed on May 24, 1968, with Mrs. Wood's concurrence. The petition alleged as its grounds advanced age (81 years) and poor health, and alleged Mrs. Wood had sufficient capacity to make an intelligent preference. The order making the appointment found those allegations to be true.

The original conservator was replaced in April 1970 upon a petition containing a like allegation of competency, which was found to be true. At that time a physician certified Mrs. Wood was mentally competent but physically unable to appear in court.

It may be gathered from the record on appeal that Mrs. Wood executed a will in August 1970 which was offered for probate after her death on November 22.

The conservator delivered the document to the office of Mrs. Wood's attorney for delivery to the trustee. Several days later Mrs. Wood telephoned the attorney and inquired whether everything had been done to carry out the appointment to Mrs. Knight, and the attorney assured her it had. Mrs. Wood died on November 22, 1970. The attorney delivered the instrument to the trustee on December 28, 1970.

Civil Code section 1385.1, subdivision (a) declares: "Except as otherwise provided in this title, if the creating instrument specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements."

It is clear that had Mrs. Wood attempted only by a will to exercise the power, such attempt would have been nugatory. (See *Rosenauer* v. *Title Ins. & Trust Co.,* 30 Cal.App.3d 300 [106 Cal.Rptr. 321].)

The intention of the donor must be respected and should be carried out. However, the intention of the donee, also, should be given effect if it may reasonably be done.

*In re Sullivan's Will* (Sup.) 36 N.Y.S.2d 443, 445, dealt with a trust under which the assets were to go as directed by the last will of the trustor: " 'if at the time of the death of said nominator no instrument in writing designating any person or persons to receive the said principal shall have been filed with the Trustee, nor within six months after the death of the said nominator no instrument in writing executed in like manner as a deed entitled to be recorded under the laws of the State of New York has been filed with the Trustee , . . .' "

After the trustor's death, there was found in his law office in the safe a sealed envelope containing an appointing instrument and a will dated some three years before a will that was admitted to probate. The envelope was opened by the deceased trustor's partner, who delivered it to the trustee. In holding the instrument should not be given effect, the court noted, at pages 445 and 447: "There is no evidence, and indeed it is not contended, that Mr. Donovan was authorized or directed by Mr. Sullivan to file the instrument with the Trust Company. Furthermore, there is no proof in the record that Mr. Sullivan ever gave directions to any one to file this document with said Trust Company. . . .

". . . In my judgment the provision of the trust agreement for the filing of the document with the trustee within six months after the death

of the nominator must be construed to mean that such filing must be made by someone authorized so to do by the nominator. There is no evidence in the case to support a finding that the power of appointment was filed at the direction or by the authority of the nominator."

No doubt one of the purposes to be served by the provision requiring the appointing instrument to be delivered to the trustee during the lifetime of the donee is that of assuring the authenticity of the document. Another purpose would be to insure that the donee, in addition to executing the appointing instrument, intended that it be delivered to the trustee during the lifetime of the donee. A third purpose might be for the protection of the trustee, who, following the death of the donee, might otherwise distribute principal or income in ignorance of the existence of an attempted exercise of the power that had not been delivered to the trustee.

None of those purposes will be thwarted in the present case by giving effect to the 1970 appointing instrument. Its authenticity has not been questioned; the donee did all it was possible for her to do to have it delivered to the trustee during her lifetime; and the trustee has not paid out to the claimants in default of the exercise of the power.

In *Watenpaugh* v. *State Teachers' Retirement*, 51 Cal.2d 675 [336 P.2d 165], the court had under consideration a designation of beneficiary under the State Teachers' Retirement System delivered by the teacher to the beneficiary, and delivered to the system only after the teacher's death. The system refused to pay on the ground the teacher had not filed the form during his lifetime. The applicable statutes did not contain an express requirement that be done. In holding the designation should be given effect, the court said, at page 681: "The purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice. A second purpose, no doubt, is to provide a method of ascertaining the desire and intent of the member with reference to the payment of death benefits. The statute should be construed to give effect to an executed designation when there is a clear manifestation of intent by the member to make the change and the designation is filed promptly after death so as to prevent any prejudice to the retirement system."

We doubt that the purpose of the conditions imposed by Mr. Wood upon the exercise of the power was to prevent a pattern of action by the donee of precisely the character she engaged in. Given the degree of control by the widow over the disposition of one-half of the community

assets required to effect the tax consequences that were the evident purpose of the estate plan, the course of conduct she followed must be considered a reasonable compliance with the conditions imposed.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied June 28, 1973, and appellants' petitions for a hearing by the Supreme Court were denied August 8, 1973.